**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Ray WELLS,
Defendant-Appellant.**

**No. 74–2317.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1975.

Theodore J. Sakowitz (Court-appointed), J. V. Eskenazi, Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Samuel

A. Alter, Jr., Kerry J. Nahoom, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before DYER, SIMPSON and CLARK, Circuit Judges.

DYER, Circuit Judge:

Wells was indicted on eight counts of possession with intent to distribute, and distribution of a controlled substance, LSD. The eight counts involved four sales. He relied solely on the defense of entrapment. The jury found him not guilty as to the first transaction (Counts 1 and 2), but guilty as to the last three (Counts 3–8). Wells appeals from the guilty verdict, assigning as error an instruction given by the trial court. Finding no error, however, we affirm.

The jury was instructed that its task was to decide whether or not the defense of entrapment was available to the defendant. The court properly concentrated on the necessity of the government's proving beyond a reasonable doubt that the defendant was predisposed to commit the crime. United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366; Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; United States v. Mosley, 5 Cir. 1974, 496 F.2d 1012; United States v. Workopich, 5 Cir. 1973, 479 F.2d 1142. After giving a general definition of entrapment, the court elaborated as follows:

If then the jury should find beyond a reasonable doubt from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case the defendant was ready and willing to commit crimes, such as charged in the indictment, whenever opportunity was afforded and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether this defendant had the previous intent or purpose to commit any offense of . the character here charged and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him.

The propriety of the above charge is not here in question. However, additional instruction became necessary when the jury paused in its deliberation to ask this question:

If we find the defendant was entrapped, is· he therefore not guilty on all counts or can we find that he was initially entrapped on Counts 1 and 2 and guilty on the remainder counts?

It is the court's response to this question which is attacked here.

The court solicited recommendations from each party. The defense attorney stated the belief that the sequence of events was "one operation," leading to the conclusion that "if the fellow was entrapped to begin with, then he should stand acquitted on all counts. . . . This case is unique in that respect because you can't separate the activities." The government took the position that the original instruction was proper, but offered no further suggestion. The court, over defense objection, then instructed the jury as follows:

You must determine whether or not the defense of entrapment is applicable to any or all counts. Each count must be considered separately. Your verdicts may be the same or they may be different. Each verdict must be agreed to by all members of the jury.

The nub of Wells' argument on appeal is that the jury should have been instructed on "course of conduct" in accord with Sherman v. United States, supra. In that case, the Supreme Court reversed a conviction for three narcotics sales finding that the government's own undisputed evidence established entrapment as a matter of law. A government informer met Sherman in a doctor's office where both were being treated for narcotics addiction. The informer made

repeated requests and finally induced Sherman to supply him with narcotics, in the course of which Sherman was re-addicted. After several transactions, the informer notified the Bureau of Narcotics that Sherman was a seller. Agents observed three further transactions, for which Sherman was tried and convicted. The court indicated in passing:

> It makes no difference that the sales for which petitioner was convicted occurred *after a series of sales.* They were not independent acts subsequent to the inducement but part of a course of conduct which was the product of the inducement. Sherman v. United States, 356 U.S. at 374, 78 S.Ct. at 822 (emphasis added).

The Court is commenting here on the argument that if there was inducement, it produced acts which occurred prior to those for which Sherman was convicted.

■ In our case, there are no prior sales. Here, the government's inducement allegedly produced only those acts for which Wells was tried. Further, there is no question of narcotics addiction produced by the original inducement. Unless the evidence established as a matter of law that there was a "course of conduct," it would have been error to charge, as the defense requested at trial, that Wells was either guilty of all or innocent of all. But Wells asks us here to charge the district court with error for failing to instruct the jury that it might find that the series of sales was a "course of conduct" induced by the activity of the government. However, the instructions, fairly read, imply that the jury was free to so find, and there was therefore no error. The trial court cannot be expected to extract from *Sherman* an incidental paragraph which, although the case was decided in 1958, has not, so far as our research reveals, been relied upon by any court in a similar situation.[1]

■ The district court instructed the jury that in order to find guilt it must find that the defendant was predisposed to commit the crime. It later instructed the jury to consider each count separately. Taken together, these instructions indicate that the jury could find Wells guilty of any or all the charges. It was unnecessary for the court to re-instruct on predisposition at the time it answered the jury's question, because it is well settled that the reviewing court must look at the entire charge and assess its full meaning. United States v. Jackson, 5 Cir. 1972, 470 F.2d 684, 688; United States v. Green, 5 Cir. 1970, 433 F.2d 946; January v. United States, 5 Cir. 1969, 409 F.2d 31; Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, cert. denied, 1969, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769.

■ Admittedly, the problem in this situation is that it would be improper for the jury to consider the first crime, in which the defendant was entrapped, as evidence of his predisposition to commit the others. However, when the whole charge is considered, the jury was properly instructed to determine whether Wells was predisposed to commit *each* crime. The fact that the jury asked the question indicates that while contemplating the original predisposition charge, it was ready to discriminate among the various sales. Discriminate it did, finding that he was entrapped on the first, but that thereafter he was not.

■■ If there were no substantial evidence on the record to support the guilty verdicts, then we might infer that the jury did not understand the charge. But in this case, taking the view most favorable to the government, there is substantial evidence to support each finding of guilty. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 499, 86 L.Ed. 680.

---

1. We find only one case in which the defendant seems to have relied on *Sherman* in seeking a "course of conduct" instruction. We do not glean enough facts from the Tenth Circuit opinion to know how similar that situation was to this. Suffice it to say that the court found no prejudicial error. United States v. Perez, 10 Cir. 1974, 493 F.2d 1339, 1345.

Two government agents were involved, the confidential informant, Kane, and the Drug Enforcement Administration Special Agent, Milford. The initial contacts were with Kane, who introduced Wells and Milford. Presumably Kane was responsible ·for any entrapment in the first sale, which took place at Wells' and Milford's first meeting. Thereafter, Kane's role diminished to that of telephone intermediary for the other two parties. The sales were all between Milford and Wells, and the jury found that at the point that Milford took over, the entrapment ceased. Much of the conflict between Wells' and Milford's testimony consists not so much of disputed facts, but of the color placed on the facts. Again, we consider them in the light favorable to the government.

Agent Milford testified that at their first meeting, Wells sold him 950 LSD tablets and indicated his willingness to continue doing business. Wells said he was one of only two people on the east coast who had available to him the quantity of LSD he had, and that he could handle larger quantities. Wells' source was a "friend" named Kevin. At the second sale, Wells asked Milford if he was interested in buying cocaine, and later on the same day called him and offered to get cocaine for $1,100 per ounce. Wells gave Milford his phone number and again discussed the California source for the LSD.

The third sale was larger, 5 grams. The source and the location were new. "Ron" supplied the drug, and Wells and Milford drove to his house in southwest Miami to make the buy. Again, Wells and Milford discussed the possibility of obtaining more. The last sale was for 950 tablets, this time for a reduced price. Wells told Milford that he would have to make this purchase before he could get larger amounts from California.

The sales took place over the space of a month, in at least two different locations. There were three different sources furnishing LSD to Wells. Wells made numerous phone calls to Milford and vice versa. Wells was knowledgeable about the entire process, both man-

ufacture and sale. There was no testimony that Wells was reluctant to continue selling once he had started. The evidence is sufficient for the jury to find that at a time between the first and second sales, when Kane faded from the scene and Milford took over, Wells stopped acting at the instance of the government, and began acting freely on his own, and was willing to commit the crime whenever the opportunity was afforded. Finding no error in the charge to the jury, the judgment of conviction is

Affirmed.