THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WASHINGTON, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HARRIS, Defendant-Appellant.

Second District    Nos. 2—85—0300, 2—85—0322 cons.

Opinion filed April 17, 1987.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellants.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

A Kane County jury found each of the defendants, Michael Washington and Robert Harris, guilty of one count of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2). The jury found both defendants not guilty on a second armed-robbery charge involving the same incident. The defendants appeal, arguing that the guilty verdicts are inconsistent with their acquittals and therefore cannot stand. We affirm.

Nick Garris, the owner and manager of Grove Liquors in Elgin, testified at the trial. Elgin police informed him on the morning of

June 27, 1984, that they expected his store to be the target of an armed robbery later that day. Garris was alone when Washington entered the store several hours later. Washington asked the price of an item and then left. Moments later, Washington returned with Harris, who was carrying a gun. Harris threatened to blow Garris' head off and ordered him to the floor. Harris then pressed the gun to Garris' head and took his wallet from his pocket. A customer, Phillip Christiano, then entered the store.

Christiano testified that Harris pointed the gun at his head, ordered him to the floor, and took his wallet. Christiano did not see Washington during the robbery.

Roy Fiske, an investigator with the Cook County sheriff's police, testified that Jerry Cotton, an informant, contacted him in June 1984 and told him that Robert Harris had asked him (Cotton) to participate in an armed robbery of Grove Liquors. Cotton and Fiske spoke frequently about the planned robbery over the next two weeks and agreed that Cotton should drive Harris to the store, but was not to go inside. According to Fiske, the robbery had originally been planned for June 14, and a surveillance team was waiting outside the store on that day. Fiske saw Cotton and Harris drive past the store, but they did not stop. Cotton later told Fiske that Harris had decided that he needed a second man to enter the store with him. Cotton had refused to do so.

Shortly thereafter, Cotton informed Fiske that the robbery was again set—this time for June 27. Cotton drove Harris and Washington to the store in his own car, which Fiske recognized, on that day. About 10 police officers were posted at various locations outside the liquor store when Harris and Washington went inside. As the defendants left the store, one of the officers approached them. Washington was carrying a cash box, which Nick Garris later identified as the one he kept under his counter. It contained approximately $200 in cash and a wallet belonging to Christiano. Both defendants ran, but were apprehended by other officers within a few minutes. Fiske paid Cotton $200 for his assistance. Cotton did not testify at the trial.

Both defendants testified at the trial. Harris stated that Cotton was a friend of his and had been living with Harris' sister in June 1984. He stated that Cotton repeatedly solicited Harris' help in a robbery he (Cotton) was planning. Harris stated that he repeatedly refused. Cotton later approached Harris with a different scheme. Cotton said that he knew the owner of a liquor store who wanted someone to rob his store by taking a cash box so that he could file a

claim with his insurance company, reporting more money taken than actually had been, and "everybody would come out a winner." Harris did not agree to participate at first, but after further urging by Cotton, he agreed. Cotton supplied Harris with a gun and told him that he (Cotton) could not go into the store because someone might recognize him as an acquaintance of the owner and realize that the robbery was not authentic.

Washington testified that he had been staying with Harris and his family during June 1984. He first met Cotton the day before the robbery. On that day and on the following morning, he repeatedly refused Cotton's requests that he participate in the robbery. He finally agreed to take part, however, after Cotton repeatedly insisted that it was "fixed" with the owner, who intended to file a false insurance claim. Washington stated that Cotton supplied Harris with the gun used in the robbery.

Harris' sister also testified. She stated that she had been living with Jerry Cotton and that Cotton had called Harris more frequently than usual in June 1984. She recognized the gun used in the robbery as Cotton's.

Harris denied threatening anyone or pointing the gun at either Garris or Christiano. He stated that he merely displayed the gun. Washington admitted having taken the cash box. Both defendants denied having taken Christiano's wallet. Both defendants stated that they would not have participated in the scheme if they had believed it was a robbery rather than an insurance scam.

Each defendant was charged with two offenses: the armed robbery of Nick Garris and the armed robbery of Phillip Christiano. The trial judge instructed the jury on the entrapment defense for both defendants and on both counts. During its deliberations, the jury sent the following note to the judge: "If the original offense that is done is due to entrapment, is any subsequent offense due to the original entrapment or should it been [sic] considered separately?"

The court discussed the matter with the attorneys, and the defense attorneys requested that it respond with a simple yes. The court refused to do so, stating that it believed the jury could resolve the question either way, depending on its view of the facts. The court responded: "Review the evidence and the instructions tendered."

The jury found both defendants not guilty of the armed robbery of Nick Garris (count 1), but guilty of the armed robbery of Phillip Christiano (count 2). Defendants argue that, in effect, the jury found entrapment as to the first offense—the robbery of Garris. They ar-

gue that, because the robbery of Christiano occurred as a part of the same course of conduct, it was necessarily a product of the entrapment, and their convictions must be reversed as a matter of law.

We must first address the State's contention that Washington has waived this issue by failing to raise it in his post-trial motion. Ordinarily, issues not properly raised in a post-trial motion will not be reviewed on appeal. (*People v. Thurman* (1984), 104 Ill. 2d 326, 329.) The well-recognized purpose of the waiver doctrine is to give the trial court an opportunity to consider the issue (see, *e.g.*, *People v. Moody* (1979), 75 Ill. App. 3d 674, 681-82) and to give the reviewing court the benefit of the trial court's judgment on it (*People v. Clark* (1982), 108 Ill. App. 3d 1071, 1077). Therefore, where an issue is sufficiently brought to the attention of the trial court, even if not raised in the defendant's post-trial motion, the appellate court may consider it. (See *People v. Harbold* (1984), 124 Ill. App. 3d 363, 372; *People v. Clark* (1982), 108 Ill. App. 3d 1071, 1077.) Here, although Washington's attorney did not expressly raise the inconsistency of the verdicts in his written post-trial motion, he stated while arguing the motion that "[i]f it was a continuing course of action, then the jury should have returned a verdict of not guilty *** on Count 2 as well." In addition, the issue was raised and fully argued in Harris' post-trial motion and rejected by the trial court. The issue has therefore been sufficiently preserved, and we will address it on behalf of both defendants.

The defendants rely exclusively on a United States Supreme Court decision, *Sherman v. United States* (1958), 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819. The defendant in *Sherman* met a police informant while both were in a treatment program for their drug addictions. (356 U.S. 369, 371, 2 L. Ed. 2d 848, 850, 78 S. Ct. 819, 820.) The informant not only induced Sherman to sell drugs to him, but to give up his treatment and return to the drug habit as well. (356 U.S. 369, 373, 2 L. Ed. 2d 848, 852, 78 S. Ct. 819, 821.) The informant went to government agents after a series of transactions had already occurred. The agents then witnessed three separate drug transactions and arrested Sherman. The court concluded that the informant's inducement constituted entrapment as a matter of law. (356 U.S. 369, 373, 2 L. Ed. 2d 848, 851, 78 S. Ct. 819, 821.) It rejected the government's argument that the intervening sales had negated any causal connection between the inducement and the subsequent transactions for which Sherman was charged, stating: "[i]t makes no difference that the sales for which petitioner was convicted occurred after a series of sales. They were not independent

acts subsequent to the inducement but part of a course of conduct which was the product of the inducement." (356 U.S. 369, 374, 2 L. Ed. 2d 848, 852, 78 S. Ct. 819, 822.) Defendants argue that *Sherman* stands for the proposition that once an entrapment is established, subsequent acts which are part of the same course of conduct are necessarily the products of the entrapment. We disagree.

■ There are no Illinois cases on point, but the issue has been considered by the United States Court of Appeals for the Second, Fifth, and Ninth Circuits. (*United States v. Khubani* (2d Cir. 1986), 791 F.2d 260, *cert. denied* (1986), 479 U.S. ___, 93 L. Ed. 2d 115, 107 S. Ct. 180; *United States v. North* (9th Cir. 1984), 746 F.2d 627, *cert. denied* (1985), 470 U.S. 1058, 84 L. Ed. 2d 832, 105 S. Ct. 1773; *United States v. Wells* (5th Cir. 1975), 506 F.2d 924; see also *United States v. Smith* (9th Cir. 1986), 802 F.2d 1119; *United States v. Cruz* (9th Cir. 1986), 783 F.2d 1470, *cert. denied* (1986), 476 U.S. 1174, 90 L. Ed. 2d 987, 106 S. Ct. 2902; *United States v. Zambardi* (2d Cir. 1960), 276 F.2d 169, *cert. denied* (1960), 364 U.S. 842, 5 L. Ed. 2d 66, 81 S. Ct. 80.) In each of those cases, the jury asked the trial court essentially the same question the jury asked here and, as here, was permitted to consider each count separately. Each of the reviewing courts affirmed the defendants' convictions for subsequent criminal conduct, concluding that whether or not an initial entrapment continues through a series of criminal transactions is a question of fact for the jury to determine. *United States v. Khubani* (2d Cir. 1986), 791 F.2d 260, 264-65; *United States v. North* (9th Cir. 1984), 746 F.2d 627, 630; *United States v. Wells* (5th Cir. 1975), 506 F.2d 924, 926.

■ In one of those cases, *United States v. Wells* (5th Cir. 1975), 506 F.2d 924, the court distinguished *Sherman,* concluding that it was limited to its peculiar facts. The court noted that the defendant in *Sherman* had become addicted to drugs as a result of the inducement and that the *Sherman* court therefore concluded that the government agent's action had not induced an isolated criminal act, but a course of criminal conduct. (506 F.2d 924, 926.) The *Wells* court noted that no court since *Sherman* had applied its broad "course of conduct" language in a similar case. (506 F.2d 924, 926.) We agree with the *Wells* court's analysis of *Sherman* and find no similarly compelling circumstances here which would have required the trial court to conclude that Cotton's actions had, as a matter of law, induced the defendants to follow a course of criminal conduct rather than to commit an isolated criminal act. We therefore find that the trial court properly permitted the jury to resolve as a factual issue

the scope of any governmental inducement.

We recognize that in each of the cases cited above, the subsequent transactions found to be independent of the initial inducement occurred weeks or months after the originally induced transaction. Here, the second robbery occurred only moments after, or during, the first. However, notwithstanding the proximity in time, the two robberies were qualitatively different by the defendants' own accounts. The defendants testified that they believed Garris to be their coconspirator in an insurance scam. Both stated that they did not believe they were, in fact, robbing him. By the defendants' own accounts, Christiano was clearly an innocent third party who wandered in during their staged robbery. The jury could quite logically have concluded that Cotton's inducement did not encompass the defendants' robbery of a customer at gunpoint.

■■ ■ In addition, once a defendant produces some evidence supporting his entrapment defense, the State must demonstrate *beyond a reasonable doubt* that he was not entrapped. (See *e.g.*, *People v. Cross* (1978), 63 Ill. App. 3d 628, 631.) The jury's acquittal of the defendants for the robbery of Garris is not equivalent to a finding of entrapment. Rather, the jury may just have concluded that the State had not met its substantial burden of proving that there was no entrapment. (See *United States v. Zambardi* (2d Cir. 1960), 276 F.2d 169, 170-71, *cert. denied* (1960), 364 U.S. 842, 5 L. Ed. 2d 66, 81 S. Ct. 80.) The jury's finding that the State had met its burden of proof with regard to the Christiano robbery is not legally inconsistent with that conclusion. (See *People v. Schwartz* (1985), 135 Ill. App. 3d 629, 642 (seeming inconsistency of verdicts may be explained by slightly different facts relevant to each offense).) We therefore affirm defendants' convictions.

Affirmed.

HOPF and INGLIS, JJ., concur.