THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BASILIO GAYTAN, Defendant-Appellant.

Second District No. 2—87—1198

Opinion filed August 1, 1989.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Barbara J. Slingerland, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Basilio Gaytan, was found guilty following a bench trial of one count of unlawful delivery of 15 grams or more of a substance containing cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and one count of unlawful possession of a controlled substance with intent to deliver a controlled substance containing 15 grams or more of cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and was sentenced, on the unlawful delivery conviction, to nine years' imprisonment, fined $21,600, and ordered to pay $3,200 restitution to the Du Page County Metropolitan Enforcement Group (Du Meg). The trial court vacated the conviction on the possession with intent to deliver count, and the State nol-prossed the five remaining counts which were for offenses on earlier dates for which the State had elected not to proceed.

On appeal, defendant raises three issues: (1) whether the trial court erred in denying his pretrial motion to require the State to disclose the address of its informant; (2) whether the trial court erred in denying defendant's motion to suppress his post-arrest statements; and (3) whether the trial court erred in ordering defendant to pay $3,200 restitution to Du Meg.

Prior to trial, defendant filed a motion to suppress his confession,

alleging that he was not advised of or did not waive the *Miranda* warnings and that he did not understand English sufficiently to comprehend or waive the *Miranda* warnings. Defendant also filed an amended motion to suppress statements alleging that his statements were involuntary due to physical force used against him at the time of his arrest, namely, that on at least two occasions he was struck in the back of the head and punched in the testicles by one of the arresting officers. The amended motion also realleged that defendant was not advised of or did not waive his *Miranda* rights prior to being questioned.

At the suppression hearing, the State presented testimony of Officer Michael Sullivan, who participated in removing defendant from his vehicle and placing him under arrest, Officers Joe De Anda and Elizabeth Brantner, who transported defendant to the police station and interrogated him, and two county deputies who processed defendant at the Du Page County jail. According to Sullivan, he was present during the entire time defendant was arrested, and he observed no one punch, kick or strike defendant, nor did he do so himself. Neither De Anda nor Brantner observed any officer strike defendant, and defendant indicated, in response to Brantner's inquiry if he was okay, that he was "[f]ine." Both sheriff's deputies indicated that they observed no bruises, abrasions or cuts on defendant and that defendant made no complaints regarding pain or physical injury.

Defendant testified, *inter alia*, that one of the officers attempted to hit him with a gun at the time of his arrest. According to defendant, at the time of his arrest someone hit him in the back of the head, "not really hard," and another officer hit him in the testicles and asked him, "Where are your weapons?" Defendant stated on cross-examination that no one hit him hard, but that his head was swollen for three weeks, and that he was not struck very hard in the testicles. Defendant also admitted that the officers placed him in the squad car carefully. Defendant did not offer any testimony that he was struck or threatened during his interrogation at the police station when he gave a statement, nor did he testify that the physical incidents at his arrest caused him to give the statement. The trial court denied defendant's motion to suppress.

Prior to trial, defendant filed a motion to disclose the identity of a State informant and "all pertinent information pertaining to the informant," including his proper name and address. The State orally objected to defendant's motion on July 24, 1987, and again on November 10, 1987. The trial court stated that it would treat defendant's motion as a continuing motion to produce and would make a

ruling later if the evidence at trial showed the informant to be a material witness. Defendant renewed his motion to disclose the location of the informant at the close of the State's case, and the trial court denied the motion.

The following facts were adduced at trial. Defendant owned and operated a grocery store called La Victoria II located in West Chicago. Defendant admitted using cocaine and had on occasion purchased cocaine for himself and an acquaintance, Audi Higgins. Sometime in late October or early November 1986, Higgins brought a scale to defendant's store and gave it to defendant. Defendant stated that Officer Charles Dvorak, the undercover officer in this case, had sold the scale to Higgins to obtain money to purchase drugs.

Officer Dvorak, an undercover officer for Du Meg, was first introduced to defendant in late October or early November 1986 by Audi Higgins, who was an informant for Du Meg. According to Dvorak, he made six purchases of cocaine in varying quantities from defendant between early November 1986 and February 25, 1987. The informant, Higgins, was not present at any of the transactions except the first, and Dvorak had no contact with Higgins after January 20, 1987.

Finally, Dvorak met with defendant in a business parking lot on February 25, 1987, and defendant delivered two clear plastic bags of a substance purported to be cocaine to Dvorak while they were seated in defendant's car. Dvorak gave defendant $3,600, exited the vehicle and activated a prearranged arrest signal, and defendant was arrested.

Defendant testified that he had purchased cocaine for his and Higgins' use prior to meeting Dvorak, but he had never sold cocaine to anyone, including Higgins. Defendant admitted selling half a gram of cocaine to Dvorak at their first meeting when Higgins introduced him to Dvorak, but stated that he refused to sell any initially and that Dvorak asked him eight times before he finally sold him the cocaine. According to defendant, Dvorak had attempted to contact him on numerous occasions after November 13, 1986, and prior to his arrest regarding the purchase of cocaine and that defendant told Dvorak on January 20, 1987, that he thought it would be a good idea to stop selling cocaine. Defendant stated that he told Dvorak every time he met with him that he did not "want any problems with drugs." Defendant admitted selling cocaine to Dvorak on various occasions between early November 1986 and February 1987. Also, on February 24, 1987, Dvorak met with defendant at his store to arrange to purchase more cocaine, and although defendant initially

refused to sell more drugs and told Dvorak he was uninterested in selling larger quantities of drugs because he was afraid, defendant did agree to sell more cocaine to Dvorak. Although defendant testified that he talked to Higgins almost every day between November and January, he offered no testimony that Higgins witnessed or participated in any transactions between defendant and Dvorak after the initial transaction in early November.

Defendant raises two contentions on appeal regarding whether the trial court erred in denying his pretrial motion to require the State to disclose the address of its informant. First, he argues that Supreme Court Rule 412(j)(ii) (107 Ill. 2d R. 412(j)(ii)) does not apply in this case because he knew the identity of the informant and merely sought the informant's address. Second, defendant contends, assuming Rule 412(j)(ii) is applicable, the informant was a material witness to his entrapment defense, and, therefore, the State should have been required to disclose the informant's address or location.

The State responds first that Higgins was not a material witness because he was present only at the initial transaction in early November 1986 with defendant and Dvorak and was not present or involved in the later transaction on February 25, 1987, for which defendant was tried. Secondly, the State argues that Higgins' disclosure would not have been helpful to defendant because its evidence that defendant was predisposed to commit the offense negated any entrapment defense.

Supreme Court Rule 412(j)(ii) states:

> "(ii) *Informants.* Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." (107 Ill. 2d R. 412(j)(ii).)

In deciding whether to require disclosure of an informant's identity, a court must balance the public's interest in protecting the flow of information against the defendant's right to prepare his defense. (*People v. Lewis* (1974), 57 Ill. 2d 232, 235, 311 N.E.2d 685; see *Roviaro v. United States* (1957), 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623, 628-29.) To determine a proper balance, the court must look to the particular circumstances of each case and take into consideration the crime charged, the possible defenses, the potential significance of the informant's testimony, and any other relevant factors. (*Lewis*, 57 Ill. 2d at 235, 311 N.E.2d at 687.) Thus, disclosure is required where the informant acted in the dual role of informant-par-

ticipant in the crime being prosecuted (*Lewis*, 57 Ill. 2d at 235, 311 N.E.2d at 687) or was actively involved in the events leading up to the transaction for which the defendant is being prosecuted and is asserting the defense of entrapment. *People v. Raess* (1986), 146 Ill. App. 3d 384, 392-93, 496 N.E. 2d 1186.

■ Here, the State relied on Rule 412(j)(ii) in refusing to disclose the address of the informant. Defendant initially argues that Rule 412(j)(ii) applies only to situations where a defendant does not know the identity of the informer. According to defendant, as he knew who the informer was, the State could not utilize Rule 412(j)(ii) in failing to disclose the informant's address. Such an argument, however, misses the point of Rule 412(j)(ii). The purpose behind Rule 412(j)(ii) is to protect the identity of an informant and therefore to encourage use of informants. (*Lewis*, 57 Ill. 2d at 237-38, 311 N.E.2d at 688-89.) Identity may very well include location or address, particularly where, as here, defendant already knows the name or physical identity of the informant. The only way that the State might effectively protect the "identity" of an informant under these circumstances is to not disclose his address or whereabouts. Further, it should be kept in mind that disclosure of an informant's location or address, like his identity, would hamper the purpose behind the nondisclosure rule because it would subject an informant to publicity or to exposure related to the trial. Accordingly, Rule 412(j)(ii) is an equally applicable basis for the State to refuse to disclose the address or location of an informant as it is for the State's refusal to disclose the name of the informant.

Defendant argues that, even assuming the applicability of Rule 412(j)(ii), he was denied due process because the State's failure to disclose the informant's address denied him access to a material witness to his entrapment defense. In order to determine whether an informant is a material witness and, therefore, whether his address should have been disclosed, it is necessary to understand the nature of the entrapment defense and its applicability under the circumstances present here.

■ The entrapment defense is set forth in the Illinois Criminal Code of 1961 (Criminal Code):

"§7—12. Entrapment. A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facil-

ity for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1987, ch. 38, par. 7—12.)

Entrapment is established when a law enforcement officer or his agent conceives a criminal enterprise and invites or induces a defendant into committing an offense which he would not have otherwise committed. (*People v. Dabrowski* (1987), 162 Ill. App. 3d 684, 696, 515 N.E.2d 1345.) Where the defendant already has the intent to commit a crime, however, and does so merely because an officer, for purposes of securing evidence, affords the defendant the opportunity to commit the crime or purposely aids and encourages him in its perpetration, there is no entrapment. (*Dabrowski*, 162 Ill. App. 3d at 696, 515 N.E.2d at 1353.) To establish entrapment, the evidence must disclose an improper inducement on the part of the law enforcement authority and the lack of a predisposition to commit the crime on the part of the defendant. *Dabrowski*, 162 Ill. App. 3d at 696, 515 N.E.2d at 1353.

The entrapment defense may apply where a defendant is prosecuted for a transaction which occurs after a series of transactions. (See *Sherman v. United States* (1958), 356 U.S. 369, 374, 2 L. Ed. 2d 848, 852, 78 S. Ct. 819, 822; see also *People v. Washington* (1987), 154 Ill. App. 3d 648, 652-54, 506 N.E.2d 1387.) Where the transaction in question is not an independent act subsequent to the inducement, but part of a course of conduct which was the product of the inducement, then entrapment is a potential defense. See *Sherman*, 356 U.S. at 374, 2 L. Ed. 2d at 852, 78 S. Ct. at 822.

■ In the present case, defendant argues that the informer was present when Dvorak initially induced him into selling cocaine to Dvorak and that the subsequent transactions, including the final one for which he was tried, were part of a course of conduct arising out of the initial inducement. Thus, defendant contends, failure to reveal the address of the informer denied him access to a material witness to his defense of entrapment.

While it is true that prosecution for a subsequent transaction does not necessarily shield the State from a claim of entrapment arising out of prior transactions, all of which are part of an ongoing course of conduct initiated by the police, a defendant must establish the relationship between the transaction in question and the prior transactions. The defendant here has failed to do so. Defendant has not offered any evidence which demonstrates that any alleged inducement as to the initial transaction was in any way operative at the time of or affected the final transaction for which he was charged.

Nor has defendant offered any evidence that Higgins was involved in or witnessed any transactions including the one for which defendant was prosecuted, which occurred after the initial transaction in early November. After the initial sale to Dvorak when the informant was present in early November 1986, some five other transactions occurred between defendant and Dvorak alone in which the informant played no role nor was a witness thereto. Without such a showing, defendant has failed to establish the materiality of the informant as to the entrapment defense raised regarding the particular transaction for which he was prosecuted.

It may very well be that the informer would be material to an entrapment defense had defendant been prosecuted for the initial transaction. (See *Lewis*, 57 Ill. 2d at 235, 311 N.E.2d at 687.) That question is not present here. Nor does defendant allege in his motion, or argue on appeal, that the informer was in any way involved as a participant or witness in the final transaction for which he was prosecuted here. Thus, defendant has failed to demonstrate the materiality of the informant as to the issue of entrapment for this particular transaction. (See *People v. Thornton* (1984), 125 Ill. App. 3d 316, 318-19, 465 N.E.2d 1049.) Balancing the public interest in protecting the flow of information against a defendant's right to prepare his defense, we conclude that under the circumstances here the State's failure to disclose the informant's address or location, if known, did not deny defendant due process.

Defendant next contends that the cause must be remanded for a new suppression hearing because the State did not call all the material witnesses to his arrest at the suppression hearing even though he alleged he had been physically abused at the arrest site prior to giving a statement later at the police station. Although all the witnesses to his making of the statement were called to testify at the suppression hearing, defendant maintains that most of the officers in a group of 12 who had been involved in his arrest where he was beaten were not called to testify.

Defendant acknowledges that he did not object in the proceedings below to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary as expressly required pursuant to section 114—11(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—11(d)), but argues that we should recognize the issue as plain error (107 Ill. 2d R. 615(a)). While some appellate court decisions have held the failure to object as a waiver of the issue on review without discussion of the plain-error doctrine (see, *e.g.*, *People v. Bates* (1988), 169 Ill. App. 3d

218, 223, 523 N.E.2d 675; *People v. Clay* (1981), 98 Ill. App. 3d 534, 541, 424 N.E.2d 814; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 279, 393 N.E.2d 1098), others have applied the plain-error rule. (See, *e.g.*, *People v. Johnson* (1988), 167 Ill. App. 3d 659, 668-69, 521 N.E.2d 609; *People v. Willis* (1975), 26 Ill. App. 3d 518, 524-25, 325 N.E.2d 715.) *People v. Tucker-El* (1984), 123 Ill. App. 3d 955, 463 N.E.2d 991, cited by defendant, where this court applied the plain-error rule, is inapposite as an objection was made in the trial court, but the issue was not preserved in a post-trial motion.

■■ ■ As the plain-error rule is a limited exception to the general waiver rule (*People v. Barnard* (1984), 104 Ill. 2d 218, 229, 470 N.E.2d 1005) and is a limitation on the parties and not the courts (*People v. Hoskins* (1984), 101 Ill. 2d 209, 219, 461 N.E.2d 941), we shall consider the issue, but find no error in the State's failure to present the testimony of every officer present at his arrest. The material-witness rule applies where the voluntary nature of a confession is brought into question by a motion to suppress. (*People v. Brooks* (1987), 115 Ill. 2d 510, 516, 505 N.E.2d 336.) Under the rule, the State must produce all material witnesses connected with the taking of the statements or present during any alleged misconduct related to the voluntariness of the statement or explain their absence. (*Brooks*, 115 Ill. 2d at 516, 505 N.E.2d at 339; *People v. Armstrong* (1972), 51 Ill. 2d 471, 475-76, 282 N.E.2d 712.) Persons who must be called as witnesses, or whose absence must be explained, are those persons whose testimony would be material on the issue of the voluntary nature of the confession. *Armstrong*, 51 Ill. 2d at 476, 282 N.E.2d at 715.

Here, defendant's amended motion to suppress states, in pertinent part:

"1. Defendant was arrested on February 25,1987 and charged with unlawful delivery of controlled substances.

2. Following his arrest, the Defendant, with his hands handcuffed behind his back, on at least two (2) occasions was struck in the back of his head and was punched in the testicles by one of the arresting officers, whom Defendant cannot identify by name, and all the while said officer asking the Defendant, 'Where's [*sic*] the guns?'

3. That Defendant was then transported to the West Chicago Police Department, where he was interrogated by Agent Elizabeth A. Brantner and Det. Joe DeAnda regarding the charges against him and as a result of which the State has obtained various statements from Defendant that it will seek to

use as evidence against him in the trial of this cause."

The amended motion fails to allege that any physical force used against defendant at the time of his arrest resulted in the subsequent statements made later at the police station being involuntary or the product of coercion. Nor does the amended motion allege what effect, if any, the officer's alleged use of physical force had on defendant's later admissions. We further note that at the suppression hearing defendant briefly testified to his asking Officer De Anda why the arresting officers hit him, but did not testify to what effect the arresting officers' misconduct might have had on the voluntariness of his decision to confess.

 Where a defendant fails to claim that his confession was the product of coercion or was involuntary, it is unnecessary for the State to produce all of the witnesses to the confession. (*In re Lamb* (1975), 61 Ill. 2d 383, 389-90, 336 N.E.2d 753; see *People v. Hills* (1980), 78 Ill. 2d 500, 506, 401 N.E.2d 523.) Likewise, where, as here, defendant claims that the police used excessive force in arresting him but failed to establish, in either his motion to suppress or in his testimony at the suppression hearing, any relationship between the alleged use of force and his subsequent confession such that the use of force resulted in a coerced or involuntary confession, the State need not produce all the witnesses present during the alleged misconduct. Accordingly, it was not error for the State to have failed to present testimony of the other officers present at the scene of defendant's arrest.

Defendant lastly contends that the trial court erred in ordering him to pay restitution in the amount of $3,200 to Du Meg. First, he contends that the trial court lacked statutory authority to order restitution because Du Meg is not a "victim" of defendant's crime within the meaning of section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6) authorizing the payment of restitution by defendants to victims in criminal cases. Second, he maintains that the trial court did not have the authority to order restitution based on conduct of the defendant which was not the basis of the conviction.

The State responds that restitution was properly ordered because "victim," as defined in section 3 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Victim's Bill of Rights Act) (Ill. Rev. Stat. 1985, ch. 38, par. 1403(a)), means "person" and "person" is defined as including the government in section 2—15 of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 2—15). The State further maintains that it was proper for the trial court to order restitution

based on the various transactions prior to the one for which defendant was convicted because they comprised a course of conduct closely related to the conduct for which defendant was convicted.

Du Meg, which expends public funds on criminal investigations, has been held not to be a "victim" within the meaning of the statute authorizing the payment of restitution by defendants to victims in criminal cases. (See *People v. McGrath* (1989), 182 Ill. App. 3d 389, 395-96, 538 N.E.2d 855, 859; *People v. Winchell* (1986), 140 Ill. App. 3d 244, 247, 488 N.E.2d 620; *People v. Evans* (1984), 122 Ill. App. 3d 733, 740, 461 N.E.2d 634.) The State, however, criticizes the *Winchell* and *Evans* decisions and urges a statutory definition of "victim" by first referring to the definition of "victim" contained in section 5—1—22 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—1—22). Section 5—1—22 defines "victim" by reference to section 3(a) of the Victim's Bill of Rights Act (Ill. Rev. Stat. 1985, ch. 38, par. 1403(a)), which refers to "victims" as "persons." The State then argues that "person" is defined in section 2—15 of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 2—15) as including "government." Accordingly, the State maintains, Du Meg is a "person" under the Criminal Code and, therefore, is a "victim" for purposes of section 5—5—6 of the Unified Code of Corrections, which provides for restitution to "victims" of a crime.

■ The focus of section 5—5—6 of the Code of Corrections under which restitution may be ordered to a victim is on the criminal acts the defendant is convicted of, such as where property was taken, property damage incurred, or personal injury suffered. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(a), (b).) The victim of such crimes is entitled to restitution in the court's discretion. Rather than looking solely at the definition of "victim" in section 5—1—22, which adopts the meaning of "victim" in section 3 of the Victim's Bill of Rights Act and is limited to victims of violent crimes only, we believe section 5—5—6 applies more broadly to victims other than from violent crimes, and, accordingly, we further look to whether property was taken, property damage was incurred, or personal injury sustained. Public monies expended in the pursuit of solving crimes do not fall within any of these categories and are not contemplated by the restitution statute. (See *Evans*, 122 Ill. App. 3d at 740, 461 N.E.2d at 639.) Other forms of penalties to discourage profiting from illegal drug offenses are provided in the Controlled Substances Act such as substantial fines and forfeiture of property. *Evans*, 122 Ill. App. 3d at 740, 461 N.E.2d at 639.

Thus, restitution under section 5—5—6 is not authorized, and the

trial court lacked the authority to order restitution. This court need not consider defendant's alternative argument that restitution was improper because it was based on transactions of which defendant was not convicted.

The judgment of the circuit court finding defendant guilty of unlawful delivery of a substance containing more than 15 grams of cocaine and sentencing him to nine years' imprisonment and a $21,600 fine is affirmed. That part of the sentence ordering defendant to pay $3,200 restitution to Du Meg is vacated.

Affirmed in part; vacated in part.

LINDBERG and WOODWARD, JJ., concur.