No. 2--05--0425

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | No. 02--CF--1580 |
| v. | ) ) ) | |
| SUSAN DANENBERGER, | ) ) | Honorable George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Susan Danenberger, was charged with committing disorderly conduct by filing a false police report (720 ILCS 5/26--1(a)(4) (West 2002)) that she had been sexually assaulted. She pleaded guilty. After an evidentiary hearing, the trial court sentenced defendant to two years' probation and ordered her to pay $2,500 to the Naperville police department (department) as restitution for the work that the department had performed in investigating her spurious report. Defendant appeals, arguing that the restitution order is not authorized by the restitution statute (730 ILCS 5/5–5--6 (West 2002)) or as a condition of probation. We agree and vacate the order of restitution.

The indictment alleged that, on or about February 26, 2002, defendant told Nick Liberio, a Naperville police detective, that "criminal sexual assault and/or battery had been

committed" although she knew that there was no reasonable ground to believe that this was true. On December 19, 2002, the trial court accepted defendant's guilty plea and conducted a sentencing hearing. Detective Liberio, the sole witness, testified as follows.

On February 26, 2002, defendant made her initial report to Liberio. That evening, she was taken to the hospital, examined, and treated. Between February 26, 2002, and May 24, 2002, when defendant confessed that the report was false, 11 detectives and 6 patrol officers investigated her case. They canvassed a large apartment complex; completed a composite drawing of the suspect; issued a press release about the alleged offense; notified commuter railroad and train police and asked them to check for potential suspects; questioned several citizens; retrieved and viewed surveillance tapes from local businesses; collected evidence and sent it to police crime labs; and obtained a DNA sample from defendant's husband and tested it against DNA samples from defendant's clothing. They also obtained a DNA sample from defendant's paramour, who disclosed that she had told him that she was sexually assaulted in 1986. Liberio and another officer investigated the alleged 1986 assault and found nothing to corroborate the story. On May 24, 2002, defendant confessed to filing a false report.

The presentence investigation report states that Liberio "reported that the department suffered a monetary loss of $6,920 as a result of this offense. This total includes staff time and resources used to investigate the defendant's sexual assault claim[,] which she subsequently admitted was false." At the sentencing hearing, Liberio was asked how he calculated the loss. Liberio explained that he, another officer, and a secretary "sat down and went and reviewed all of our time sheets for that particular period." Asked whether he had any documentation "regarding the number of hours or the hourly rates

based on the subject of the $6,920 opinion [sic]," Liberio responded, "No, I don't have it here. I am sure we can produce it."

On December 19, 2002, the trial court pronounced sentence. The court stressed that defendant's crime had harmed not only the people who had been detained and questioned but also the department, which ended up wasting "time and expense" to investigate a nonexistent offense. The court stated that, in addition to sentencing defendant to 24 months' probation, it would "order restitution not to exceed $6,920," with the department "to supply some documentation in support of that amount of restitution." That day, the court entered a written order that, in part, required defendant to pay $6,920 in restitution to the department "upon verification/documentation."

On January 3, 2003, defendant moved in writing to vacate the guilty plea or to reduce the sentence. The record is silent about what happened in the case between January 3, 2003, and November 15, 2004, when the State filed a petition to revoke defendant's probation. The petition alleged, with no explanation, that defendant had failed to pay $6,335 in restitution that was due on December 16, 2004. On the same day, a few hours later, defendant filed an "amended motion to modify sentence." Defendant's motion contended that the restitution order of December 19, 2002, was void because the department was not a "victim" under the restitution statute. 730 ILCS 5/5--5--6(b) (West 2002). She relied on cases denying restitution to police departments for the expenses that they incurred in the normal course of investigating crimes. See People v. Velez, 336 Ill. App. 3d 261 (2003); People v. Derengoski, 247 Ill. App. 3d 751 (1993). On December 9, 2004, defendant filed a response to the petition to revoke her probation, again arguing that the restitution order was void.

On December 30, 2004, the trial court heard arguments on defendant's motion to modify the sentence. The State contended that the restitution order was proper because here, unlike the police departments in Velez and Derengoski, the department was seeking to recover what it lost as a direct result of defendant's crime, not what it spent to investigate a crime.  The trial court agreed.  In a written opinion filed December 30, 2004, the court held that the restitution order was valid on two bases.  First, the statute, which allowed the court to order defendant to pay restitution "for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant" (730 ILCS 5/5--5--6(a) (West 2002)), applied to the department under the circumstances of the case. The court distinguished spending money "to investigate crime," which was not compensable under the statute, from spending money "to investigate a non-crime that the defendant falsely reported."  Second, irrespective of the restitution statute, the restitution was valid as a condition of her probation.  See 730 ILCS 5/5--6--3(b) (West 2002).  This was because defendant's crime forced the department to spend money for purposes other than its real mission of "solving crime and maintaining order" and that defendant, not the taxpayers, should be held accountable for those expenses.

The court also informed the parties that it would set the case for a hearing "to determine what is a reasonable amount for the defendant to reimburse public agencies for amounts expended to investigate her false report of a crime."  However, on March 28, 2005, the court entered an order reciting that the parties had stipulated to restitution of $2,500.  The order required defendant to pay this amount to the department, without prejudice to her "right to appeal the legal basis for the restitution that was established" in

the court's opinion of December 30, 2004. On April 26, 2005, defendant filed a notice of appeal.

The State argues that we lack jurisdiction over this appeal because the notice of appeal was untimely. The State reasons as follows. The final judgment in this case was the sentence that was imposed on December 19, 2002. Defendant had to file a notice of appeal within 30 days after the judgment or within 30 days after the trial court disposed of the last timely filed motion directed against the judgment. See 188 Ill. 2d R. 606(b). Although defendant filed a motion to reconsider within 30 days, she did nothing to bring the motion to the trial court's attention or seek a ruling on it. As a result, the motion was not effectively made. See People v. Stewart, 412 Ill. 106, 108 (1952); People v. Gambill, 91 Ill. App. 3d 302, 303 (1980). The motion that defendant did bring to the attention of the trial court was not filed within 30 days of the judgment and thus did not extend the time to file the notice of appeal. Therefore, because the notice of appeal was filed more than 30 days after the entry of the judgment (indeed, more than two years afterward), it was untimely and we lack jurisdiction over this appeal. We disagree.

The State's argument assumes that the order of December 19, 2002, was the final judgment in the case. It was not. The final judgment in a criminal case is the sentence. People v. Caballero, 102 Ill. 2d 23, 51 (1984). When restitution is part of the sentence, the judgment is not final until the trial court determines the amount of restitution that is due. People v. Richardson, 252 Ill. App. 3d 593, 595 (1993); People v. Biederman, 100 Ill. App. 3d 558, 560 (1981). Here, the order of December 19, 2002, required defendant to pay restitution of no more than $6,920, with the exact amount due to be determined after the department documented its losses. Even as of December 30, 2004, the trial court had not

determined how much restitution defendant would pay. It is clear from the record that this amount was not decided until March 28, 2005, when the court ordered defendant to pay $2,500, the stipulated amount. Thus, the judgment was not final until March 28, 2005. As defendant filed her notice of appeal within 30 days after this order, we have jurisdiction to consider her appeal.

Because defendant's notice of appeal was timely, we need not consider her argument that, because she contends that the order of restitution was void, it can be challenged at any time.

We turn to the merits of defendant's appeal. She contends first that, under cases such as Velez and Derengoski, the department cannot be a "victim" as that term is used in the restitution statute. She reasons that the purpose of the statute is to reimburse victims of crime for the actual out-of-pocket expenses they incur as a result of the offenses and that whatever the department spent to investigate defendant's spurious complaint came out of its normal operating expenses. She concludes that, because the department suffered no pecuniary loss, it cannot receive monetary compensation.[1] Under the circumstances of this case, we agree with defendant that the department is not entitled to restitution.

---

[1]The State does not respond to defendant's argument, but instead contends that, because the record on appeal is incomplete, we must presume that the trial court's judgment was correct. See Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). Specifically, the State notes that we lack a transcript of the hearing on defendant's guilty plea and that it is possible that, as part of a plea agreement, defendant consented to paying restitution to the department.

The State's argument is unpersuasive. Absolutely nothing in the record suggests

that the parties made any such agreement. Had they done so, we would expect to find the

State mentioning the agreement in opposing defendant's motion to reduce her sentence,

and we would also expect to find the trial court mentioning the agreement when imposing the sentence and when considering defendant's motion to reduce her sentence. In no proceedings following defendant's plea of guilty did either the State or the trial court even remotely imply that defendant's plea agreement (if indeed there was a plea agreement at all) included a promise to pay restitution to the department. Although the parties eventually stipulated that defendant would pay restitution of $2,500, they did so with the express

The pertinent portions of the restitution statute provide:

"In all convictions for offenses *** in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant, the court shall order restitution as provided in this Section. In all other cases, except cases in which restitution is required under this Section, the court must at the sentence hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense. If the court determines that an order directing the offender to make restitution is appropriate, the offender may be sentenced to make restitution. If the offender is sentenced to make restitution the Court shall determine the restitution as hereinafter set forth:

(a) At the sentence hearing, the court shall determine whether the property may be restored in kind to the possession of the owner or the person entitled to possession thereof; or whether the defendant is possessed of sufficient skill to repair and restore property damaged; or whether the defendant should be required to make restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately

understanding that the stipulation in no way waived or prejudiced defendant's right to argue that any order of restitution was impermissible.

caused by the conduct of the defendant or another for whom the defendant is legally accountable ***.

(b) In fixing the amount of restitution to be paid in cash, the court shall allow credit for property returned in kind, for property damages ordered to be repaired by the defendant, and for property ordered to be restored by the defendant; and after granting the credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant." (Emphasis added.) 730 ILCS 5/5--5--6 (West 2002).

The trial court held that this language allowed the department to recover from defendant under the facts of this case. The issue on review is whether the trial court correctly interpreted the statute. Statutory construction, which raises issues of law that we review de novo (In re Estate of Dierkes, 191 Ill. 2d 326, 330 (2000)), requires us to ascertain the intention of the legislature. Garcia v. Nelson, 326 Ill. App. 3d 33, 38 (2001). Ordinarily, the statutory language itself is the best guide to legislative intent, and, if the language is unambiguous, we must follow it. Garcia, 326 Ill. App. 3d at 38.

Applying these principles here, we conclude that the restitution statute does not apply to the facts of this case. The department may not receive restitution, for the simple reason that defendant's offense did not proximately cause the department any out-of-pocket expenses, losses, damages, or injuries. See 730 ILCS 5/5--5--6(a), (b) (West

2002).[2] At the sentencing hearing, Liberio testified that he arrived at the figure of $6,920, the amount of restitution that the State originally requested, by ascertaining how many hours each department employee spent investigating defendant's spurious allegation that she had been sexually assaulted, multiplying this figure by the employee's hourly pay rate, and combining the individual employees' totals to arrive at the overall amount that the department "spent" as a result of defendant's crime. Thus, the department sought restitution only for the hours that officers and other employees spent on the job investigating the nonexistent crime. Liberio never contended that defendant's crime caused the department any other type of losses, e.g., damage to property, direct monetary loss, or anything else beyond the officers' regular salaries.

Under these circumstances, the department's "losses" are not compensable under the restitution statute. The statute clearly requires that, to receive restitution, a victim must have suffered "out-of-pocket expenses, damages, losses, or injuries" (730 ILCS 5/5--5--6(a) (West 2002)) and that the amount of restitution must be limited to the victim's "actual out-of-pocket expenses, losses, damages, and injuries" (730 ILCS 5/5--5--6(b) (West 2002)). Here, the State failed to prove that the department suffered any out-of-pocket losses as a result of defendant's offense. The money that the officers were paid for the hours that they spent investigating defendant's claim was money that they would have been paid anyway. There is no evidence that anyone who investigated defendant's report was paid anything beyond his or her normal compensation for working on defendant's case. In the absence of

---

[2]Of course, there is no suggestion that the department (or any employee of the department) suffered "injury to their person." 730 ILCS 5/5--5--6 (West 2002).

evidence otherwise, we presume that police officers are not paid for piecework. Although defendant's offense caused officers to spend time that they could have used more productively, it did not cause the department to spend money that it would have retained otherwise. The restitution statute provides compensation for financial losses, not for nonpecuniary opportunity costs.

Our conclusion that the department is not entitled to compensation is supported by this court's opinion in People v. Gaytan, 186 Ill. App. 3d 919 (1989). There, in denying restitution to a law enforcement agency that spent money on a controlled drug purchase, we explained that, under the circumstances of the case, the agency was not a "victim" of the defendant's violation of the drug laws. We acknowledged that the restitution statute clearly contemplates a definition of "victim" that is broader than that used in section 5--1--22 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005--1--22 (now 730 ILCS 5/5--1--22 (West 2002))), which adopted the definition of "victim" in the Bill of Rights for Victims and Witnesses of Violent Crime Act (Ill. Rev. Stat. 1987, ch. 38, par. 1403(a) (now codified, as amended, as Rights of Crime Victims and Witnesses Act (725 ILCS 120/3(a) (West 2002)))). Nonetheless, we concluded that, in order to be a "victim" who is eligible for restitution under the statute, a person or agency must show that "property was taken, property damage was incurred, or personal injury [was] sustained." Gaytan, 186 Ill. App. 3d at 929. We held that, under those circumstances, the agency in Gaytan was not a victim, as it had merely expended public monies in the pursuit of solving crimes. Gaytan, 186 Ill. App. 3d at 929. Thus, we denied the agency any restitution.

Arguably, Gaytan is distinguishable, as here the department was, in a sense, the "victim" of defendant's offense and not merely trying to detect and prosecute the offense.

As the trial court reasoned, the department was "victimized" by being forced to waste time and effort that could have been better spent. In <u>Gaytan</u>, the law enforcement agency deliberately spent money in order to afford the defendant an opportunity to commit an offense. Under those circumstances, it would do violence to common usage to call the agency a "victim." Obviously, that is not the case here; the department did not seek to induce defendant to commit a crime.

Nonetheless, <u>Gaytan</u>'s broad holding, that a "victim" must be someone who has suffered property damage, personal injury, or financial loss, applies here. Such a loss is not, by itself, a <u>sufficient</u> condition for recovery (as we held in <u>Velez</u> and <u>Derengoski</u>). However, it is plainly a <u>necessary</u> condition. See <u>State v. Wilson</u>, 193 Or. App. 506, 92 P.3d 729 (2004) (state department of corrections could not receive restitution for time spent apprehending prisoner who had committed offense of escape, as regular salaries and overhead expenses would have been incurred anyway). We need not decide whether, in some sense, the department was a "victim" of defendant's offense and not merely performing its normal functions when it investigated her spurious report. Even were we to distinguish this case from those such as <u>Velez</u> and <u>Derengoski</u>, the department would still not be eligible for restitution. Like the corrections department in <u>Wilson</u>, the department did not incur a compensable loss; it merely spent time and effort that could have been devoted to other uses.

Although we hold that the department in this case is not a "victim" as that term is used in the restitution statute, we do not hold that a law enforcement agency can <u>never</u> be a victim entitled to restitution. We are aware that several of our opinions contain language that could be read out of context to support such a <u>per se</u> rule. See <u>Velez</u>, 336 Ill. App. 3d

at 267 ("a police department or government agency is not considered a 'victim' within the meaning of the restitution statute"); Derengoski, 247 Ill. App. 3d at 754 ("the vast weight of authority has held that a police department or government agency is not considered a 'victim' within the meaning of the restitution statute"). However, the real rationale of these opinions is that a law enforcement agency ought not be compensated for the public money that it spends in performing its basic function of investigating and solving crimes. See Velez, 336 Ill. App. 3d at 267; Derengoski, 247 Ill. App. 3d at 754-55. The reasons for this rule are easy to find. First, in common parlance, merely investigating an offense does not make a police department a "victim" of the offense. Second, were the rule otherwise, police departments would receive restitution in almost every criminal case, thus being paid twice-- once by the taxpayers and once by the offender--for performing their basic function.

We add an important caveat. We are not prepared to say that a law enforcement agency can never be compensated via the restitution statute for the losses that it suffers as a proximate result of a crime. For example, it is at least plausible that, if a person commits criminal damage to property by destroying a police department squad car, then the department may be compensated for the loss. See United States v. Donaby, 349 F.3d 1046, 1053-54 (7th Cir. 2003) (village entitled to compensation for damage to police car, as damage was proximately caused by defendants' bank robbery). That is a question for another day. Also not requiring our resolution at this time is whether the department may recover against defendant by some type of separate civil suit. We hold only that, under the facts of this case, the department may not receive compensation from defendant under the restitution statute.

Having concluded that the trial court erred in relying on the restitution statute, we now consider whether the restitution order is valid as an exercise of the court's broad power under section 5--6--3 of the Unified Code of Corrections (730 ILCS 5/5--6--3 (West 2002)) to impose reasonable conditions of probation on defendant. Although the court has discretion in imposing conditions other than those specifically listed in subsection (b) of section 5--6--3, these conditions must nonetheless relate to the nature of the offense or the rehabilitation of the defendant. 730 ILCS 5/5--6--3(b) (West 2002). We conclude that, under the circumstances here, requiring defendant to pay restitution to the department violates this requirement.

Here, the trial court never asserted or implied that requiring defendant to pay restitution to the department was related to her rehabilitation. The trial court's stated purpose was purely compensatory. However, we cannot say that requiring defendant to pay financial compensation to an agency that has suffered no financial loss is reasonably related to the nature of the offense. Our conclusion is based primarily on our construction of the statute, a matter that we consider de novo. See Dierkes, 191 Ill. 2d at 330.

A free-floating power of "restitution" would circumvent the restrictions that the legislature has crafted in the restitution statute. Section 5--6--3(b)(8) (730 ILCS 5/5--6--3(b)(8) (West 2002)) allows a trial court to require a defendant to "make restitution as provided in Section 5--5--6 of this Code." (Emphasis added.) Using the principle of construction expressio unius est exclusio alterius, we conclude that this language expresses the legislative intent that any restitution to an alleged victim must conform to the restitution statute and that, although the trial court has discretion in imposing conditions of

probation, it may not stretch the concept of restitution beyond that embodied in the statute that specifically addresses criminal defendants' potential liability for restitution.

Because the trial court lacked the authority to enter the restitution order in this case, we vacate that part of the judgment.  In all other respects, the judgment of the circuit court of Du Page County is affirmed.

Affirmed in part and vacated in part.

HUTCHINSON and CALLUM, JJ., concur.