2016 IL App (3d) 130650

Opinion filed February 22, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois. |
| | ) | |
| | ) | Appeal No. 3-13-0650 |
| v. | ) | Circuit No. 12-CF-642 |
| | ) | |
| JALIN FORD, | ) | The Honorable |
| | ) | Michael Brandt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant Jalin Ford was convicted of reckless conduct for causing damage to a van owned by the Peoria Multi-County Narcotics Enforcement Group (MEG) unit. The trial court sentenced defendant to one day in jail and 18 months of probation. The court ordered defendant to pay restitution to the Peoria MEG unit, as well as court costs and "mandatory assessments." The Peoria County Circuit Clerk assessed a total of $902.50 in fines and fees against defendant. On appeal, defendant argues that (1) there was insufficient evidence to prove he committed reckless conduct, (2) the trial court erred in requiring him to pay restitution, and (3) the Peoria

County Circuit Clerk improperly assessed fines and fees against him. We affirm defendant's conviction and restitution judgment but vacate the fines and fees assessed by the circuit clerk and remand, with directions, for the trial court to properly assess fines and fees.

¶ 2                                    FACTS

¶ 3        Defendant was charged with one count of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2012)) for knowingly damaging a van owned by the Peoria MEG unit on May 23, 2012. He was later charged with one count of reckless conduct (720 ILCS 5/12-5(a) (West 2012)) for accelerating his vehicle toward the Peoria MEG unit van "when the two vehicles were close" and endangering the van's driver.

¶ 4        A bench trial was held in July 2013. Ryan Tarby, a police officer with the Tazewell County Sheriff's Office, testified that he was part of the Peoria MEG unit on May 23, 2012. On that day, he drove a minivan owned by the unit to an apartment building located at 3210 N. Woodbine in Peoria, where a confidential informant had arranged to buy drugs from defendant.

¶ 5        Tarby explained that there is a parking lot behind the apartment building at 3210 N. Woodbine. Two driveways access that parking lot: one north of the apartment building, and one south of the apartment building. Tarby drove the Peoria MEG unit van in the middle of the north driveway toward the back parking lot of the apartment building. Tarby estimated that the north driveway was approximately one-and-a-half vehicles in width and could fit only one vehicle at a time. As Tarby proceeded up the driveway, he saw defendant's vehicle round the corner and come toward him from the parking lot in the back of the apartment building.

¶ 6        When defendant saw Tarby, defendant straightened out his vehicle, sped up and came directly at the van Tarby was driving. Tarby estimated that the vehicles were 50 to 60 feet apart when he saw defendant "hit the gas." Tarby testified that he was driving less than 5 miles per

2

hour at the time. After defendant increased his speed, both defendant and Tarby turned their steering wheels in the same direction to brace for the impact, and their vehicles collided.

¶ 7    Tarby testified that the left front bumper of the minivan struck the driver's side of defendant's vehicle. There was extensive damage to defendant's driver's side door and minor damage to the bumper of the van. Tarby believed that defendant tried to drive around him through the bushes but that there was not enough room in the driveway for defendant's vehicle to get through without hitting the van. Defendant's vehicle became pinned between Tarby's vehicle and bushes next to the apartment building.

¶ 8    Once the vehicles came into contact, defendant tried to continue to accelerate but was unsuccessful. Tarby had his foot on the brake, so defendant's vehicle could not move. Tarby was wearing a green flight suit with a badge and a black jacket with the word "Police" on both the front and back.

¶ 9    Chris Watkins, a deputy with the Peoria County Sheriff's Office, testified that he was part of the Peoria MEG unit and was in front of the apartment building at 3210 N. Woodbine in Peoria on May 23, 2012, when defendant arrived in his vehicle. Defendant drove behind the building. Master Sergeant Gorsuch pulled in behind defendant, using the south driveway, and Tarby, who was driving the unit's "arrest van," came up the driveway on the north side of the apartment building to "block in" defendant.

¶ 10    Watkins could not see behind the apartment building, but he observed defendant's vehicle "as soon as he turned the corner on the north side of the apartment complex." When defendant turned the corner, "he turned sharply to the north like he was – it appeared to me that he was avoiding the arrest van that pulled in front of him." Defendant appeared to accelerate and

3

veer to his right. Defendant's vehicle came into contact with a bush and the van Tarby was driving. Watkins thought that defendant seemed to be trying to avoid Tarby's vehicle.

¶ 11 Ryan Gorsuch, a master sergeant with the Illinois State Police currently assigned to the Peoria MEG unit, was participating in the unit's "buy bust" on May 23, 2012, at 3210 N. Woodbine in Peoria. He was driving an unmarked blue Chevy Tahoe. He witnessed defendant drive to the back of the apartment building. Gorsuch drove his vehicle on the south driveway and proceeded to the back of the building with his strobe lights activated. When defendant saw him, he rounded the north corner of the building. Gorsuch did not see the collision between defendant and Tarby. When he came around the corner, he saw defendant's vehicle and the van Tarby was driving "pinned up in the bushes." He heard defendant's engine revving up, like defendant was trying to accelerate.

¶ 12 Defendant testified that as he was driving around the back of the apartment building at 3210 N. Woodbine in Peoria on May 23, 2012, he turned into the north driveway and saw a van coming at him "at a high rate of speed." According to defendant, Tarby "just rushed me and hit my driver's side and rammed me into the bushes." Defendant estimated that he was driving 10 miles per hour, while the van was traveling at least 30 miles per hour.

¶ 13 Defendant testified that he had no intention of making contact with the van. He further testified that "after he was rammed," he was "pinned in the bushes" and made no attempt to move his vehicle. Defendant testified that he did not see any red and blue flashing lights behind him when he was in the parking lot because he only "looked forward." He denied revving his engine after the impact. He said he did not know a police officer was driving the van.

¶ 14 Roger Whitman runs Green Chevrolet, a body shop and dealership in Peoria. He examined the Peoria MEG unit van that Tarby was driving on May 23, 2012, and determined that

4

it needs a new front bumper cover, a new left headlight assembly and a new hood. He estimated that it will cost $1,836.44 to repair it.

¶ 15    The trial court found defendant not guilty of criminal damage to property and guilty of reckless conduct. The trial court sentenced defendant to one day in jail and 18 months of probation. The court ordered defendant to pay restitution of $1,836.44 to the Peoria MEG unit, as well as "the cost of the proceedings, and any mandatory assessments." The Peoria County Circuit Court Clerk prepared a document showing that defendant owed $902.50 in fines and fees.

¶ 16    ANALYSIS

¶ 17    I

¶ 18    Defendant first argues that he was not proven guilty beyond a reasonable doubt of reckless conduct. He argues that his conduct was not reckless because he tried to avoid hitting the van Tarby was driving.

¶ 19    The relevant inquiry in reviewing the sufficiency of the evidence to sustain a verdict on appeal is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *People v. Hopkins*, 201 Ill. 2d 26, 40 (2002). "A person commits reckless conduct when he or she, by any means lawful or unlawful, recklessly performs an act or acts that: (1) cause bodily harm to or endanger the safety of another person; or (2) cause great bodily harm or permanent disability or disfigurement to another person." 720 ILCS 5/12-5(a) (West 2012).

¶ 20    A driver is reckless if he knows of the danger of a collision and collides with another vehicle without employing reasonable means to avoid the accident. *People v. Brajcki*, 150 Ill. App. 3d 506, 512 (1986). A reasonable person would attempt to avoid a collision by reducing

speed and braking when seeing an oncoming vehicle. See *People v. Mikyska*, 179 Ill. App. 3d 795, 802 (1989).

¶ 21 In a prosecution for reckless conduct, the State must prove that defendant's conduct shows a conscious disregard of a substantial risk likely to cause bodily harm such that a reasonable person would have acted differently in the same situation. *People v. Gosse*, 119 Ill. App. 3d 733, 738-39 (1983). The mental state of recklessness is to be inferred from all of the facts and circumstances in the record. *Id*. at 736. Whether given conduct is reckless is a question for the trier of fact. *Id*.

¶ 22 Here, both Tarby and Watkins testified that when defendant saw the Peoria MEG unit van approaching his vehicle head on, he accelerated, causing the van and his vehicle to collide. This testimony was sufficient to establish recklessness. See *Brajcki*, 150 Ill. App. 3d at 512; see also *West Chicago St. R.R. Co. v. Shannon*, 106 Ill. App. 120, 125 (1903) (motorman who accelerates instead of stopping after seeing someone crossing track in front of him is reckless). A reasonable person in the same situation would not have sped up but would have stopped his vehicle to avoid a collision. See *Mikyska*, 179 Ill. App. 3d at 802. Under the circumstances presented here, the trial court could have reasonably concluded that defendant acted recklessly. There was sufficient evidence to support the trial court's verdict.

¶ 23                                                                 II

¶ 24 Next, defendant argues that the court's restitution order is void because the Peoria MEG unit is not a "victim" eligible to receive restitution.

¶ 25 The restitution statute, which is contained in section 5-5-6 of the Unified Code of Corrections, authorizes courts to order restitution when a person has "received any injury to his or her person or damage to his or her real or personal property as a result of the criminal act of

the defendant." 730 ILCS 5/5-5-6 (West 2012). The statute provides: "[T]he court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may have suffered out-of-pocket expenses, losses, damages, and injuries proximately cased by the same criminal conduct of the defendant ***." 730 ILCS 5/5-5-6(b) (West 2012). A "victim" under the restitution statute is someone who has suffered property damage, personal injury, or financial loss. *People v. Danenberger*, 364 Ill. App. 3d 936, 943 (2006).

¶ 26 Generally, a trial court's determination on restitution will not be reversed absent an abuse of discretion. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35. However, when, as here, the issue is whether a restitution order is authorized by statute, it is a question of law that we review *de novo*. *Id*.

¶ 27 "[T]he vast weight of authority has held that a police department or government agency is not considered a 'victim' within the meaning of the restitution statute [citation]." *People v. Derengoski*, 247 Ill. App. 3d 751, 754 (1993) (citing *People v. Lawrence*, 206 Ill. App. 3d 622 (1990), *People v. Chaney*, 188 Ill. App. 3d 334 (1989), *People v. Gaytan*, 186 Ill. App. 3d 919 (1989), *People v. McGrath*, 182 Ill. App. 3d 389 (1989), *People v. Winchell*, 140 Ill. App. 3d 244 (1986), and *People v. Evans*, 122 Ill. App. 3d 733 (1984)). Courts have precluded law enforcement agencies from receiving restitution for (1) funds used to purchase illegal drugs from defendants (*People v. Mocaby*, 378 Ill. App. 3d 1095, 1102 (2008); *McGrath*, 182 Ill. App. 3d at 395-96; *Chaney*, 188 Ill. App. 3d at 335; *Gaytan*, 186 Ill. App. 3d at 929-30; *Evans*, 122 Ill. App. 3d at 740), (2) funds used to purchase stolen goods from a defendant (*Winchell*, 140 Ill. App. 3d at 247), (3) expenses incurred in arresting a defendant (*Derengoski*, 247 Ill. App. 3d at 754), and

7

(4) expenses incurred in investigating a false criminal complaint (*Danenberger*, 364 Ill. App. 3d at 941-42).

¶ 28    The "rationale of these opinions is that a law enforcement agency ought not be compensated for the public money that it spends in performing its basic function of investigating and solving crimes." *Id*. at 944. The reasons for the rule are twofold. First, merely investigating an offense does not make a law enforcement agency a "victim" of the offense. *Id*. "Second, were the rule otherwise, police departments would receive restitution in almost every criminal case, thus being paid twice–once by the taxpayers and once by the offender–for performing their basic function." *Id*.

¶ 29    Nevertheless, there is no *per se* rule prohibiting a law enforcement agency from receiving restitution. *Id*. "[I]t is at least plausible that, if a person commits criminal damage to property by destroying a police department squad car, then the department may be compensated for the loss." *Id*. (citing *United States v. Donaby*, 349 F.3d 1046, 1053-54 (7th Cir. 2003) (village entitled to restitution for damage to police car proximately caused by defendant's bank robbery)). Many courts have required defendants to pay restitution to police departments when they damage police vehicles. See *United States v. Washington*, 434 F.3d 1265, 1268-70 (11th Cir. 2006) (defendant required to pay restitution to police department for damage to police cars caused during armed robbery); *United States v. Reichow*, 416 F.3d 802, 805 (8th Cir. 2005) (defendant ordered to pay restitution for damage defendant caused to police car); *State v. Dillon*, 637 P.2d 602, 608-09 (Or. 1981) (defendant ordered to pay restitution to police department for damage caused by defendant's collision with police car); *People v. Barnett*, 654 N.Y.S.2d 918, 919 (N.Y. App. Div. 1997) (defendant required to pay restitution to New York State Police Department to

8

cover "the cost of repairing a police car that was damaged as a direct result of defendant's criminal conduct").

¶ 30 Here, the trial court ordered defendant to pay restitution in the amount of the repair bill for the Peoria MEG unit van that was damaged by defendant's reckless conduct. The restitution in this case did not reimburse the Peoria MEG unit for its normal costs of investigating crime. Instead, the restitution covered the cost of repairing a law enforcement vehicle that was damaged as a direct result of defendant's criminal conduct. See *Dillon*, 637 P.2d at 608-09; *Barnett*, 654 N.Y.S.2d at 919. Because the Peoria MEG unit suffered out-of-pocket expenses as a result of defendant's conduct, it was entitled to restitution. See *Danenberger,* 364 Ill. App. 3d at 944. We affirm the trial court's restitution award.

¶ 31                                                                III

¶ 32 Finally, defendant argues that the Peoria County Circuit Court Clerk improperly assessed fines and fees against him that were not authorized by the trial court. He further contends that he is entitled to *per diem* credit for any fines assessed against him. The State concedes that the circuit clerk imposed fines without authorization and agrees that we should vacate the assessments and fines and remand the case with directions to the trial court to correct any errors in the imposition of court costs, assessments and credits.

¶ 33 It is well settled that the imposition of a fine is a judicial act, and the circuit clerk does not have authority to impose fines, including mandatory fines. *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 20. Any fine imposed by the circuit clerk is void. *Id*. Where a circuit clerk has improperly imposed mandatory fines, the reviewing court may vacate those fines and reimpose them. *People v. Williams*, 2013 IL App (4th) 120313, ¶ 18.

¶ 34 Where monetary assessments have been improperly imposed, the proper remedy is to vacate the assessments in full and remand the matter so the trial court may enter an order of enumerated costs. See *People v. Hunter*, 2014 IL App (3d) 120552, ¶¶ 16-17. This remedy allows the trial court to delineate "the specific amounts the court intended to *order* this defendant to pay." (Emphasis in original.) *Id*. ¶ 17. Remand also allows the matter to be addressed by the trial court with input from both parties. See *id*.

¶ 35 Here, the parties agree that the circuit clerk improperly imposed fines against defendant. Accordingly, we vacate all of the fines and fees, and remand the cause with the following directions: the trial court should impose each proper fine, fee, assessment and court cost setting forth in a written order the statutory authority for each one. The trial court should also calculate the appropriate $5-per-day presentence incarceration credit and offset defendant's fines by that amount. See 725 ILCS 5/110-14(a) (West 2012).

¶ 36 CONCLUSION

¶ 37 The judgment of the circuit court of Peoria County is affirmed in part, vacated in part, and remanded with directions.

¶ 38 Affirmed in part and vacated in part; cause remanded with directions.