# IN THE COURT OF APPEALS OF IOWA

No. 16-1665
Amended December 8, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DARRYL B. SHEARS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

A defendant appeals an order requiring him to pay restitution. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., McDonald, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**SCOTT, Senior Judge.**

In this appeal of a restitution order, we are asked to resolve whether it is foreseeable that police officers would end a high-speed chase of the van driven by Darryl Shears by hitting his van with their police vehicles. Because we find such actions foreseeable, we affirm the restitution order.

On February 11, 2016, the City of Davenport filed a restitution claim for $7093.88 for damages to the police vehicles sustained during the officers' efforts to stop the van Shears was driving. In April 2016, the State and Shears entered into a plea agreement, and Shears agreed to plead guilty to a lesser-included eluding charge and second-degree criminal mischief as charged.[1]

At the April 8, 2016 plea hearing, Shears admitted to intentionally damaging other people's property in excess of $1000 and failing to stop when signaled to do so by a uniformed officer in a marked patrol car using flashing lights and sirens while exceeding twenty-five miles per hour. The court deferred acceptance of the pleas pending receipt of a presentence investigation report and set sentencing for May 19, 2016. But before the hearing, Shears filed a motion in arrest of judgment on May 4, asking the court to set aside his pleas and claiming he was not aware "of the potential consequence [of] restitution for both counts." After the May hearing on his motion, the court found Shears had "buyer's remorse" and denied relief.

On July 26, 2016, the court sentenced Shears to five-year and two-year consecutive, indeterminate terms of incarceration. The court also required "a

---

[1] The State agreed to drop another charge, possession of controlled substances, second offense.

victim restitution hearing be held within the next [thirty] days." At that August 24 hearing, Shears did not challenge the dollar amount of restitution, only whether he was responsible for paying it. The court's September 16, 2016 restitution order required Shears to pay "$7093.88 for damage to Davenport Police Squad Cars. The squad cars were damaged when the police were chasing [Shears] by car for his eluding and criminal mischief crimes, which he later" pled to and was sentenced on.

Shears filed a pro se notice of appeal on September 28, 2016. On February 1, 2017, the supreme court's order noted Shears had timely appealed the September 16, 2016 restitution order and granted Shears a delayed appeal from the July 26, 2016 sentencing order, combining the appeals under the same docket number.

In this restitution proceeding, if we find no error of law, we are bound by the district court's factual findings if they are supported by substantial evidence. *See State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001). Restitution connotes "compensating the victim for loss," and it "forces the offender to answer directly for the consequences of his or her actions." *Id.* The rationale for a restitution order under Iowa criminal law "is similar to the rationale of tort under civil law." *Id.* Iowa law requires restitution to be ordered in all criminal cases in which the defendant pleads guilty. *See* Iowa Code § 910.2 (2015).

"Any damages that are causally related to the criminal activities may be included in the restitution order." *Bonstetter*, 637 N.W.2d at 168. Thus, in calculating the amount of restitution, the court "must find a causal connection between the established criminal act and the injuries to the victim" by a

preponderance of the evidence. *Id.*; *State v. Holmberg*, 449 N.W.2d 276, 377 (Iowa 1989) (noting the same restitution requirements).

On appeal and citing to cases from Wisconsin, Shears argues his "act of eluding itself did not cause the damage" to the police vehicles. "Instead, it was the actions of the Davenport police" "in carrying out their attempts to stop him" that caused the "damage to the police vehicles." *See State v. Haase*, 716 N.W.2d 526, 527, 530 (Wisc. Ct. App. 2006) (denying restitution where officer drove squad car into field during pursuit, officer stopped car without incident to pursue defendant on foot, and officer's car subsequently burst into flames); *State v. Storlie*, 647 N.W.2d 926, 929 (Wisc. Ct. App. 2002) (denying restitution for the cost of destroyed "stop sticks" utilized to end high-speed chase because "stop sticks" were tool similar to police department's cost of overtime and thus, a normal cost of law enforcement).

We find the Wisconsin cases Shears cites factually distinguishable and inapplicable. Utilizing the Iowa standard of proximate cause, we conclude the prosecution here has met its causation burden if substantial evidence shows the damage to the police vehicles was "a reasonable foreseeable consequence or within the range of harms" of Shears eluding the officers who were trying to stop him. *See State v. Tyler*, 873 N.W.2d 741, 749 (Iowa 2016) (holding that "[e]ven if 'proximate cause' or what we now call 'scope of liability' remains part of the State's causation burden in a criminal case" there is substantial evidence "a group assault on [the victim] was a reasonably foreseeable consequence or within the range of harms of [defendant's] initial act" of punching the victim in the head and knocking him down); *see also State v. Dillon*, 637 P.2d 602, 608 (Or. 1981) (allowing

restitution for damage to the sheriff's car that defendant hit with his own car because such damage "is an item of damages for which defendant could have been civilly liable under any recognized formulation of tort law").

Similarly, in this restitution challenge, we find the officers using their vehicles to hit the vehicle Shears was driving in an attempt to stop him "was a reasonably foreseeable consequence or within the range of harms" of Shears leading the officers in a high-speed chase and refusing to stop while being pursued.  In sum, we find the State satisfied its burden of proving causation and affirm the restitution order.  *See State v. Davis*, No. 15-1223, 2016 WL 6902325, at *1 (Iowa Ct. App. Nov. 23, 2016) (resolving restitution challenge and finding evidence supported "district court's conclusion the manner of [the defendant's] operation of the vehicle" "caused the damages" to the other driver's vehicle).

**AFFIRMED.**

Tabor, P.J., dissents;  McDonald, J., concurs.

**TABOR, Presiding Judge** (dissenting)

I respectfully dissent. In this eluding case, the City of Davenport did not qualify as a "victim" under Iowa Code section 910.1(5) (2015) (defining victim as "a person who has suffered pecuniary damages as a result of the offender's criminal activities"). The statutory term "person" is broad enough to include a government entity like the Davenport police department. *See State v. Hagen*, 840 N.W.2d 140, 147 (Iowa 2013). But the problem here is the police did not suffer pecuniary damages *as a result* of Shears's criminal activities.

"The words 'as a result of' in the definition of 'victim' clearly connote causation." *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989) (citation omitted). The restitution chapter defines "criminal activities" as any crime for which there is a plea of guilty or a verdict of guilty, or is admitted by the offender, whether or not prosecuted. Iowa Code § 910.1(1). Pecuniary damages include "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event." *Id.* § 910.1(3).

Shears pleaded guilty to felony eluding and criminal mischief in the second degree. The criminal mischief charge related to his collision with a chain link fence on private property at the end of the chase. The State did not charge Shears with criminal mischief related to impacts with the police squad cars, likely because it could not prove that Shears intentionally damaged the squad cars that, in fact, ran into him. *See id.* § 716.1; *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998) (requiring State to prove defendant intended to cause damage).

Nevertheless, the police department's restitution claim listed damages to three police cars incurred when the officers rammed the vehicle Shears was

driving. The claim listed the following repair amounts: $574.91 for squad 134; $4570.28 + $61.50 (tow) for squad 311; and $1887.19 for squad 360—for a total of $7093.88. These repairs were necessitated by the officers' enforcement decisions while pursuing Shears and not by the criminal activities to which Shears pled guilty.

The minutes of evidence indicated Davenport police located Shears, "a wanted suspect," inside a residence on West Locust Street. As Shears left the residence in a minivan, officers "initiated a vehicle pursuit" and eventually a total of five squad cars joined the chase. According to police reports attached to the minutes, Shears was "currently on the pursuable list." At least two different officers performed or tried to perform PIT maneuvers[2] to impede the progress of the minivan. Officer Bobby Flaherty described his decision to place his squad car in harm's way:

> Shears was slowing to an acceptable speed and turning south on Pine [Street]. Due to the reduced speed I was comfortable attempting a PIT maneuver in the corner. I made contact with Shears's van on the rear driver side with my squad car's front passenger side. The PIT maneuver worked and the van spun around 180 degrees. I exited my squad car and ordered Shears out of the vehicle at gunpoint. Shears made eye contact with me but refused to comply with my orders. Shears then drove back east through the alley he had just come from.

Nothing in the minutes or attached police reports suggests the damage to the squad cars was the "result of" Shears's criminal activity—willfully failing to bring

---

[2] A "Precision Intervention Technique" or PIT maneuver is a driving technique used by police officers that is designed to halt a fleeing motorist by hitting his or her car at a specific point to throw the car into a spin and brings it to a stop. *See Harris v. Coweta Cty*, 433 F.3d 807, 810 (11th Cir. 2005), *rev'd, Scott v. Harris*, 550 U.S. 372, 375 (2007).

the minivan to a stop when given a signal to do so by police. *See* Iowa Code §
321.279(3).

The majority purports to use "the Iowa standard of proximate cause" to hold
that the State met its burden to show the squad car damage was "a reasonably
foreseeable consequence" of the officers trying to stop Shears's eluding. That
holding contravenes our prior restitution case law on causation. "The damage
must have been caused by *the offender's criminal act* to justify the restitution
order." *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995) (emphasis added)
(discussing similarity between tort element of proximate cause and causal
connection necessary for restitution award).

The legal or proximate cause test is now analyzed as "scope of liability."
*See Thompson v. Kaczinski,* 774 N.W.2d 829, 836-39 (Iowa 2009) (adopting
concept from Restatement (Third) of Torts: Physical & Emotional Harm (Am. Law
Inst. 2010) [hereinafter Restatement Third]). The question is whether the police
department's decision to deploy its squad cars to crash into the fleeing vehicle was
within the "scope of liability" for Shears's conduct. *See In re J.S.*, No. 13-0174,
2013 WL 5291959, at *5 (Iowa Ct. App. Sept. 18, 2013) (holding officer's torn
hamstring was not within the scope of liability of a juvenile delinquent's act of
running from officer after being told to stop). Applying the "risk standard" from the
Restatement (Third), I would find the damage to the squad cars resulting from the
officers' PIT maneuvers was outside the scope of the risk taken by Shears when
he ignored the police lights and sirens. *See* Restatement (Third) § 34 cmt. g
("When the harm that occurs arises from a risk other than one that was among
those that made the actor's conduct tortious, the actor is not liable.").

In this case, it was not Shears's own criminal activities, but the officers' intentional strategy to disrupt those activities that resulted in the damage. Law enforcement agencies generally are not compensated for the public money they spend in performing their basic functions of investigating and solving crimes. *See People v. Ford*, 49 N.E.3d 954, 959 (Ill. Ct. App. 2016). But an agency may receive restitution for its loss if, for example, "a person commits criminal damage to property by destroying a police department squad car." *Id.* (collecting cases, including *Dillon*, 637 P.2d at 608, cited by the majority). The difference between our instant facts and *Ford, Dillon* and the other collected cases is that Shears did not drive into the squad cars. They drove into him. The definition of a victim embraces a notion of "passivity, where the harm or loss suffered is generally unexpected and occurs without the voluntary participation of the person suffering the harm or loss." *See Igbinovia v. State*, 895 P.2d 1304, 1308 (1995) (holding police department which expended money in drug-buying operation to obtain evidence against defendant was not "victim" within meaning of statute). I would reverse the restitution order.