2020 IL App (1st) 160160-U

No. 1-16-0160

Order filed January 10, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 11114 |
| | ) | |
| CATHERINE BROWN, | ) | Honorable |
| Defendant-Appellant. | ) | Stanley J. Sacks, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for reckless conduct, as a lesser-included offense of the charged offense of aggravated battery, where the evidence was sufficient to support the conviction.

¶ 2    Following a bench trial, defendant Catherine Brown was convicted of reckless conduct, as a lesser-included offense of the charged offense of aggravated battery (720 ILCS 5/12-3.05 (d)(4)(i) (West 2012)), and sentenced to five days' incarceration, two years of probation and 50 hours of community service. On appeal, defendant contends that: the evidence was insufficient to

prove her guilty beyond a reasonable doubt of reckless conduct; and, under the specific facts of this case, reckless conduct was not a lesser-included offense of aggravated battery. For the following reasons, we affirm.

¶ 3    After a May 13, 2013, encounter with police, defendant was charged with two counts of attempt first-degree murder (Counts 1 and 2), five counts of aggravated battery (Counts 3 through 7), and one count of resisting or obstructing a peace officer (Count 8). Defendant waived her right to a jury and the case proceeded to a bench trial.

¶ 4    Chicago police officer Michelle Morsi[1] testified that on the evening of May 13, 2013, at around 9:00 p.m., she and police officer Jose Lopez were on patrol in a marked police vehicle. In the course of responding to a call about an unrelated incident, they entered an alley near the intersection of Kerfoot Avenue and 83rd Street. After the officers briefly stopped to speak with someone in relation to that call, they continued to drive through the alley. Morsi testified that the alley was a "one-way alley" in which "[o]nly one vehicle can fit."

¶ 5    As the officers proceeded northbound, they encountered a Lexus, driven by defendant, heading southbound through the alley. The officers stopped their police vehicle approximately five to eight feet from the Lexus. Two of defendant's daughters, an eight-year-old and a one-year old, were also in defendant's vehicle. Morsi rolled down her window and "motioned [her] hand to tell [defendant] to move back" so that the police car could pass. Defendant then "flashed her high beams" at the police car and honked her horn.

¶ 6    The officers exited their vehicle and walked toward the Lexus. Morsi approached the driver's side of the Lexus, while Lopez went to the passenger's side. Morsi saw defendant roll up

_____

[1] The trial transcripts sometimes refer to Morsi using her married name, Murphy.

her driver's side window and lock the door. Morsi testified that she asked defendant to move her vehicle. Morsi saw defendant get on her cell phone and begin to act "agitated." Morsi explained that it "sounded like she had called 9-1-1 and she was saying things like the police were scary and could she get a lieutenant." When Morsi asked defendant for her driver's license and insurance, defendant said "no." Morsi then radioed for a supervisor to come to the location. She stated that these events occurred over the course of several minutes.

¶ 7     Morsi recalled that, at one point during the encounter, defendant "motioned * * * with her index finger and looked in our direction and said, wait." Defendant "then reached what looked like either between the seats or underneath" one of the seats in the Lexus. In response, Morsi and Lopez pointed their guns at defendant, and shouted at her to show her hands. Morsi testified that, by this point, defendant's eight-year-old daughter had "jumped into the driver's side seat." Morsi was eventually able to open the driver's side door to the Lexus. After she did so, defendant screamed and punched her. Morsi also stated that she was struck in the face by defendant's daughter.

¶ 8     Morsi testified that defendant then "grabbed the back of [her] shirt and vest and in the same motion put the [Lexus] in reverse and went down the alley." Morsi was "dragged down the alley face down" as the vehicle moved in reverse. Morsi eventually broke free and jogged back to the police vehicle. Meanwhile, Lopez ran after the Lexus, which exited the alley and turned onto Kerfoot Avenue, still traveling in reverse.

¶ 9     Morsi entered the police car and drove it out of the alley and onto Kerfoot Avenue, where she saw the Lexus. Morsi explained that she decided to strike the Lexus with the police car in

order to "gain control of the situation." Morsi drove the front of the police vehicle into the front of the Lexus, which in turn struck a parked car. Several officers then arrested defendant.

¶ 10    Morsi was taken to a hospital for treatment after the incident. Morsi stated she had bruises and scrapes, felt pain around her ribs, and had difficulty sitting or standing. She took medical leave for six weeks. Morsi identified photographs of her uniform, face and body as they appeared after the incident.

¶ 11    Morsi explained that the police vehicle was equipped with a dashboard-mounted camera; she identified video footage from that camera, which was admitted and published as People's Exhibit 17. The video (which does not include sound) shows the police car encounter defendant's Lexus at 9:11 p.m. Several minutes pass after both vehicles are stopped. Due to the angle at which the vehicles faced each other, the video footage shows only the passenger's side of the Lexus while the two cars are stopped. During that time, Lopez can be seen approaching the passenger's side of the vehicle before stepping out of view. The video footage does not show the actions of defendant or Morsi at the driver's side of the Lexus.

¶ 12    At 9:17 p.m., the video shows the Lexus shaking for several seconds before rapidly moving in reverse and driving out of the camera's view. Approximately 15 seconds later, Morsi can be seen jogging back toward the police vehicle. A few seconds later, the police vehicle begins moving. The video footage shows the view from the police car as it drives through the alley, turns right onto Kerfoot Avenue, and crashes into the front of the Lexus. Defendant exits the Lexus and stands up near the driver's side door. Several other officers approach. The video shows Morsi use pepper spray in the direction of defendant; Morsi then climbs atop a parked car

and points her gun at defendant. A number of officers then pull defendant away from her car and out of the camera's view.

¶ 13    On cross-examination, Morsi testified that, after she drove the police car into the Lexus, she sprayed pepper spray into the Lexus.

¶ 14    The State also called Lopez, who similarly testified that the officers were driving through the alley when they were met by defendant's Lexus. Lopez "signaled the defendant" to move back, but she "honked her horn and flashed her high beam lights at us." He then approached the passenger's side of the Lexus, while Morsi approached the driver's side. Defendant was "irate" and "screaming into her phone." Lopez withdrew his weapon after defendant "made a sudden movement under the driver's side seat."

¶ 15    Lopez explained that Morsi eventually opened the driver's side door of the Lexus, and that defendant's daughter struck Morsi with her fist. He then saw defendant grab Morsi "by her vest" after which the Lexus "began traveling at a very high rate of speed in reverse." Lopez testified that Morsi was "dragged" for approximately 50 feet. He then radioed dispatch to request backup.

¶ 16    Lopez ran after the Lexus, which exited the alley and began "traveling southbound on Kerfoot in reverse at a high rate of speed" before striking a parked car. By the time he reached the scene, Morsi had driven the police car into the Lexus. Defendant exited the Lexus, waved to other persons nearby and "scream[ed] for help" before she was placed under arrest.

¶ 17    Lopez identified recordings of his radio calls to dispatch during the incident, which were played in court. Lopez testified that in the calls, he reported "that my partner is being dragged."

¶ 18    On cross-examination, Lopez again testified that he saw defendant grab Morsi by her vest before the Lexus drove away in reverse. He recalled that "my partner's body was being dragged by the vehicle."

¶ 19    During the State's case, the parties stipulated to admission of video footage from a camera located above the intersection of south Kerfoot Avenue and West 83rd Street, as well as video footage from a separate surveillance camera from a nearby building. The parties also stipulated that People's Exhibit No. 18 contained recordings of two 911 calls made by defendant during the incident, which were played in court. The parties further stipulated to admission of hospital records reflecting Morsi's medical treatment following the incident.

¶ 20    After the State rested, defendant moved for a finding of acquittal. The court found that defendant lacked the specific intent necessary to support a conviction for attempt murder, and thus found her not guilty as to Counts 1 and 2. The court additionally found insufficient evidence that Morsi had suffered great bodily harm, and on that basis, acquitted defendant with respect to the two aggravated battery counts which required proof of great bodily harm (Counts 3 and 6). The court denied defendant's motion with respect to the three remaining aggravated battery counts (Counts 4, 5, and 7) and the count of resisting or obstructing a peace officer (Count 8).

¶ 21    The defense first called a private investigator, who testified that he had examined the alley where the incident took place and made measurements of the alley.

¶ 22    Defendant testified that, at the time of the incident, she was driving home with her two children to her residence at 8320 South Kerfoot Avenue. She typically drove through the alley to access a driveway behind her residence. As she drove through the alley, she saw a police car and came to a stop. Defendant rolled down her window and told the police that she was trying to get

into her nearby driveway. She testified that Morsi jumped out of the police car, called defendant a "b****h" and told her "move that f***ing car back." Morsi frightened her eight year-old-daughter, who began screaming. Morsi approached defendant's window. Because she was afraid, defendant dialed 911 and asked police to send a commander or lieutenant to the scene.

¶ 23    Defendant testified that when Morsi asked for her driver's license, defendant responded by "crack[ing] the window" and telling the officer "one moment." When she attempted to get her license from her wallet, the male officer (Lopez) drew his gun and said "b****, what the f*** are you reaching for."

¶ 24    Defendant recalled that Morsi placed a stick-like object "down through the window," unlocked the driver's side door, and pulled the door open. Defendant "started screaming no ***" and tr[ied] to hold the door closed" from inside the Lexus as Morsi pulled on the door from the outside. Defendant denied that she or her daughter ever touched or struck Morsi.

¶ 25    Defendant explained that she put her car in reverse because she believed the police were trying to harm her, and she wanted to move to a location where her neighbors could witness the officers' conduct. After she put the car in reverse, the driver's side door "swung open." Morsi "started chasing the car real fast and then she fell." Defendant continued to drive out of the alley and stopped the Lexus in front of her residence. After she stopped, Morsi "rammed" into her with the police car. Defendant exited her car and called out to neighbors, telling them that the police were trying to hurt her and her children. Defendant testified that Morsi maced her and that a number of officers beat and kicked her.

¶ 26    On cross-examination, defendant denied that the officers ever asked her to back up her car. She acknowledged that Morsi said "b***h, move your f***ing car" but that it "didn't

register to me" what the officer was requesting. Defendant denied that she struggled with or struck Morsi and maintained that Morsi was outside the car door when she put the Lexus in reverse.

¶ 27    By stipulation, the parties agreed to admission of business records kept by a paramedic with the Chicago Fire Department, regarding his treatment of Morsi.

¶ 28    In closing argument, defense counsel argued that there was no evidence that defendant had dragged Morsi. Counsel contended that Morsi was pulling on the driver's side door from the outside, and that she merely fell down after the Lexus began to move.

¶ 29    In announcing its decision, the court remarked that both the police and defendant had "overreacted" to the situation. The court rejected the defense theory that Morsi merely fell. In doing so, the court noted that the photographs of Morsi and her uniform following the incident "corroborated that she was in fact dragged to some extent" and found that Morsi was "dragged at least some distance, maybe not as far as she initially mentioned, but she was dragged some distance." The court also rejected as "[not] particularly credible" defendant's testimony that Morsi had simply fallen.

¶ 30    However, the court declined to find that defendant had acted "knowingly," as necessary for the offense of aggravated battery. Instead, the court found that reckless conduct was "more appropriate than aggravated battery." The court thus convicted defendant of reckless conduct, a Class A misdemeanor, as a lesser-included offense of aggravated battery (Count 4). The court found defendant not guilty with respect to the remaining counts of aggravated battery (Counts 5 and 7) and resisting arrest (Count 8). The court sentenced defendant to five days' incarceration, 24 months of probation, and 50 hours of community service.

¶ 31    On appeal, defendant first contends that the evidence was insufficient to convict her of reckless conduct. "When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). In reviewing the sufficiency of the evidence, "great deference should be given to trial judges when they hear the evidence and observe the witnesses." (Internal quotation marks omitted.) *People v. Austin*, 349 Ill. App. 3d 766, 769 (2004). A conviction "will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justified a reasonable doubt of defendant's guilt. [Citation.]" *Wheeler*, 226 Ill. 2d 92, at 115.

¶ 32    In this case, the trial court found defendant guilty of reckless conduct under section 12-5(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-5(a)(1) (West 2012)). A person commits this offense when she "by any means lawful or unlawful, recklessly performs an act or acts that" "cause bodily harm to or endanger the safety of another person." *Id.* Under section 4-6 of the Code, "[a] person is reckless or acts recklessly when that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2012).

¶ 33    Notably, the reckless conduct statute does not require that the victim suffer actual bodily harm, so long as the defendant "endanger[ed] the safety of another person." 720 ILCS 5/12-5(a)(1) (West 2012). In this case, the trial court explicitly found that defendant "dragged" Morsi.

¶ 34 Defendant does not dispute that the act of dragging someone from a moving vehicle endangers that person. Rather, her argument is that the other evidence at trial "disproved" Morsi and Lopez's testimony that Morsi was, in fact, dragged. She claims that the officers' testimony on this point was "conclusively disproved" by other evidence, including the video footage from the police car's camera. According to defendant, that video shows that Morsi "jogg[ed] back to the police car uninjured" only 15 seconds after the Lexus drove away in reverse, which "obviously is not long enough" for Morsi to have been dragged as the officers testified. Defendant maintains that the "officers' transparent lies, their bizarre misconduct, and Officer Morsi's lack of injuries are consistent with [defendant's] explanation" of events and support the conclusion that Morsi "simply tripped in the dirty alley after chasing the Lexus a short distance."

¶ 35 After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that Morsi was dragged. In this case, the court heard starkly conflicting accounts of the incident at trial. Morsi and Lopez both testified that defendant grabbed Morsi and dragged her as defendant drove her vehicle in reverse. On the other hand, defendant maintained that she never touched Officer Morsi and claimed that the officer merely fell. "In a bench trial, it is the job of the trial judge, sitting as the factfinder, to make determinations about witness credibility." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 76. "[A] trial court's credibility determinations are entitled to great deference, and they will rarely be disturbed on appeal. [Citations.]" *Id.* In reaching its decision, the court expressly noted that it did not find "particularly credible" defendant's testimony that Morsi had simply fallen. In doing so, the court noted that photographs of Morsi and her uniform following the incident "corroborated that she was in fact dragged to some extent or another." The court, as the trier of fact in this case,

was entitled to credit the officers' testimony and to discredit the defendant's version of events. We will not substitute our judgment for that of the trier of fact on matters of witness credibility. *People v. Brown*, 2013 IL 114196, ¶ 48. We also "will not reverse a conviction simply because the evidence is contradictory [citation] or because the defendant claims that a witness was not credible." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 36    Further, we reject defendant's suggestion that the other evidence "disproved" the officers' testimony about defendant's actions. Significantly, the video footage in evidence (including the video from the police vehicle's dashboard camera) does not show the driver's side of the Lexus in the moments before it moved in reverse. Neither defendant nor Morsi are in the camera's view when the vehicle pulls away. That is, the video footage does not show whether Morsi was dragged or if she merely fell. As such, we cannot say that the video footage "disproves" the officers' accounts, or allows us to disturb the trial court's credibility findings.

¶ 37    The other evidence cited by defendant is similarly inconclusive regarding the central factual dispute of whether defendant dragged Morsi. Defendant cites the audio recordings of defendant's 911 calls in which she expressed fear of the police officers. However, defendant does not explain how the content of those calls undermines, let alone "disproves," the officers' testimony that she dragged Morsi. Similarly, we are not persuaded by defendant's suggestion that Morsi would necessarily have sustained more serious injuries, had she been dragged from defendant's vehicle. The trial court was entitled to find that Morsi was dragged at least some distance, even if she did not suffer great bodily harm.

¶ 38    Simply put, the court considered the conflicting testimony with the other evidence, and credited the testimony of Morsi and Lopez that defendant dragged Morsi. As mentioned, that

finding of fact is entitled to great deference. Viewing the evidence in the light most favorable to the prosecution, we cannot say that this finding was irrational, or that the evidence was "so unreasonable, improbable, or unsatisfactory that it justified a reasonable doubt of defendant's guilt." *Wheeler*, 226 Ill. 2d at 115. We thus reject defendant's suggestion that the evidence was insufficient to convict her of reckless conduct.

¶ 39     Defendant next contends that "[r]eckless conduct is not a lesser included offense of aggravated battery in this case." Defendant acknowledges that reckless conduct "may be properly considered a lesser included offense of aggravated battery in other cases" but argues that it was not a proper lesser-included offense under "the specific allegations and evidence in this case." Defendant notes that the charging instrument alleged that she acted with intent to kill or seriously injure Morsi, but the trial court found insufficient evidence of such an intent. She maintains that, "[h]aving rejected those extremely serious allegations, it was improper for the trial judge to conclude that she recklessly acted in a way that caused less severe bodily harm or otherwise endangered" Morsi.

¶ 40     We first note that, as acknowledged by defendant's brief, this argument was not preserved at trial. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (To preserve a claim for review, a defendant must both object at trial and raise the issue in a written post-trial motion.). Nonetheless, defendant urges that we may consider it under the plain-error rule, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). We will apply the plain-error doctrine when:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.*

¶ 41    "The first step of plain-error review is determining whether any error occurred." *Id.* As explained below, we do not find any error in defendant's conviction for reckless conduct as a lesser-included offense of aggravated battery.

¶ 42    "A defendant * * * has a fundamental due process right to notice of the charges against him; thus a defendant may not be convicted of an offense he has not been charged with committing. [Citations.] However, a defendant may be convicted of an uncharged offense if it is a lesser-included offense of a crime expressly charged in the charging instrument, and the evidence adduced at trial rationally supports a conviction on the lesser-included offense and an acquittal on the greater offense. [Citations.]" *People v. Clark*, 2016 IL 118845, ¶ 30.

¶ 43    "Whether an offense is a lesser-included offense of a charged offense is an issue of law that we review *de novo*. [Citations.]" *Id*. ¶ 32. We apply the "charging instrument approach" to determine whether an uncharged offense is a lesser-included offense. *Id.* ¶ 31. As explained by our supreme court:

"Under the charging instrument approach, the lesser offense need not be a necessary part of the greater offense, but the facts alleged

in the charging instrument must contain a broad foundation or main outline of the lesser offense. [Citations.] The charging instrument need not explicitly state all of the elements of the lesser offense as long as any missing element can be reasonably inferred from the allegations included [Citations.] Under the charging instrument approach, whether a particular offense is 'lesser included' is a decision which must be made on a 'case-by-case basis' using the factual description of the charged offense in the indictment. *Id.* ¶ 31.

¶ 44     In this case, defendant was convicted of reckless conduct as a lesser-included offense of Count 4, which charged her with aggravated battery under section 12-3.05(d)(4)(i) of the Code. 720 ILCS 5/12-3.05 (d)(4)(i) (West 2012). Specifically, Count 4 of the indictment alleged that defendant, "in committing a battery * * * knowingly caused bodily harm to Michelle Morsi, to wit: dragged Michelle Morsi from a moving motor vehicle, and [defendant] knew the individual battered to be a peace officer" of the Chicago Police Department.

¶ 45     Significantly, defendant does not dispute that Count 4's allegations set forth at least a "broad foundation or main outline of the lesser offense" of reckless conduct. *Clark*, 2016 IL 118845, ¶ 31. That is, she does not argue that the charging instrument—which alleged that she "knowingly caused bodily harm" to Morsi, failed to give her adequate notice.[2]

---

[2]     As noted by the State, an "allegation of recklessness may be inferred from an allegation of knowledge, since knowledge is a more culpable mental state." See *People v. Lane*, 2017 IL App (1st) 151988, ¶ 15 (holding that reckless conduct was lesser-included offense of domestic battery charge, where "the only difference between the charged offense and reckless conduct is the mental state.").

¶ 46    Rather, her argument is that *under the facts of this case*, she could not be found to have acted recklessly. Defendant claims that she was "focused on escaping a dangerous situation" that she reasonably believed threatened her and her children. She acknowledges that her conduct was "perhaps negligent," but argues that the evidence "does not prove beyond a reasonable doubt that she was consciously aware that driving away could cause injury to Officer Morsi." In other words, she claims that the evidence at trial does not "rationally support[] a conviction on the lesser-included offense" and that her conviction is erroneous as a matter of law. *Clark*, 2016 IL 118845, ¶ 30.

¶ 47    Defendant's argument is unconvincing, for the reasons we have already discussed with respect to her primary argument regarding the sufficiency of the evidence. The trial court, sitting as factfinder, credited the officers' testimony that defendant did not merely drive away, but *dragged* Morsi as she did so. The court could certainly find that, under the circumstances, defendant dragged Morsi and by doing so consciously disregarded a substantial and unjustifiable risk of harm to Morsi. See *People v. Ford*, 2016 IL App (3d) 130650, ¶ 21 (the "mental state of recklessness is to be inferred from all of the facts and circumstances in the record"). In sum, defendant's "lesser-included offense" argument fails under the same reasoning as her primary argument regarding the sufficiency of the evidence.

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.